**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

ASHLEY IMMING,

      Plaintiff,

v.                                                                                    Civ. No. 23-378 GJF/DLM

OSVALDO DE LA VEGA and
MESILLA CAPITAL INVESTMENTS, LLC,

      Defendants.

**MEMORANDUM OPINION AND ORDER ON**
**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

      THIS MATTER is before the Court on Defendants Osvaldo De La Vega and Mesilla

Capital Investments, LLC's Motion to Dismiss First Amended Complaint [ECF 15] ("Motion").

The Motion is fully briefed. *See* ECFs 17, 18. The Court heard oral argument on November 30,

2023 ("Hr'g").[1] After thoroughly considering the parties' arguments, and as explained below, the

Court will **DENY** the Motion in all respects.

**I.   BACKGROUND**

      In May 2023, Plaintiff Ashley Imming ("Plaintiff") filed her Complaint in this Court,

asserting the following claims against Defendants Osvaldo De La Vega ("De La Vega") and

Mesilla Capital Investments, LLC ("MCI"):  Violations of the New Mexico Voidable Transfers

Act (Count I), Conversion (Count II), and Alter Ego Declaratory Relief (Count III). ECF 1.

Defendants moved to dismiss the complaint on the grounds of improper forum shopping, res

judicata, issue preclusion, and failure to state a claim pursuant to Federal Rule of Civil Procedure

12(b)(6). ECF 5. Plaintiff filed her First Amended Complaint ("FAC") within 21 days after service

---

[1] The Hr'g citation refers to an audio recording of the November 30, 2023 hearing stored on the Court's Liberty system. Neither the audio recording nor a transcript is currently available on CM/ECF; however, any party can obtain the recording through the Court's records department and have it transcribed.

of Defendant's motion to dismiss. *See* Federal Rule of Civil Procedure 15(a)(1)(B).[2] Plaintiff explained that she amended her complaint "as a result of the New Mexico Court of Appeals' June 12, 2023 decision [that] the trial court lacked jurisdiction to pierce [MCI's] corporate veil." ECF 10 at 1. Plaintiff's FAC omits previously-pled counts for conversion and a violation of the New Mexico Voidable Transfers Act and proceeds on a singular count asserted against both De La Vega and MCI:  Piercing the Corporate Veil. *See* ECF 10.

### A. Underlying State Court Action

Like its previous iteration, the FAC alleges that Plaintiff sued De La Vega in 2017 in the Third Judicial District Court for the State of New Mexico for, among other things, sexual harassment that she endured while employed by Southwest Health Services, P.A., De La Vega's medical practice (hereinafter "underlying State court action"). *Compare* ECF 1 ¶¶ 1, 16–17, *with* ECF 10 ¶¶ 17, 31, 30. Prior to trial, De La Vega represented that he owned personal assets valued in the tens of millions to include artwork valued at $3 million, real estate valued at $25 million (with $22 million in Mexican real estate), aircraft, and financial assets. ECF 10 ¶¶ 27–37. At trial, De La Vega entered a written stipulation, initialed by his counsel, which stated that his net worth at that time exceeded $25 million. *Id*. ¶¶ 32–34. The jury awarded Plaintiff $250,000 in non-economic damages, and the trial court entered judgment in favor of Plaintiff and against De La Vega in the amount of $867,971.07 plus 15% interest.[3] *Id*. ¶¶ 3, 40, 41.

Without paying the judgment or posting a bond, De La Vega appealed. *Id*. ¶¶ 43, 45, 46, 49. Plaintiff alleges that, while the case was on appeal, De La Vega "concealed his assets, removed

---

[2] Rule 15(a)(1)(B) provides that "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or *21 days after service of a motion under Rule 12(b)*, (e), or (f), whichever is earlier" the party may amend its pleading as a matter of course. Fed. R. Civ. P. 15(a)(1)(B) (emphasis added).

[3] With interest, this judgment has accrued to more than $1.2 million. ECF 10 ¶ 42.

some from New Mexico, moved cash outside of New Mexico, and attempted to make himself

judgment-proof by transferring millions of dollars in money and property to his alter-ego[, MCI]."

*Id*. ¶¶ 4, 47. Indeed, Plaintiff alleges that MCI received millions of dollars in assets from De La

Vega without paying any consideration. *Id*. ¶¶ 48–49.

De La Vega testified in a post-judgment deposition that he was unable to satisfy the court

judgment because he had no personal income. *Id*. ¶ 50 (citing ECFs 10-16, 10-17, 10-18). In

addition, he claims to have no personal assets worth more than $5,000. *Id*. ¶ 113 (citing ECF 10-

19 at 11:24–12:8). De La Vega reports that "the only valuable assets he owns are a financed 2020

Ford 250 truck, a financed boat (2017 Mastercraft X23), a high-mileage 2006 Prius, and his

ownership interest in MCI."[4] *Id*. ¶¶ 81, 108.

Plaintiff moved to seize assets in satisfaction of the judgment, and, in response, the state

court issued Writs of Execution. *Id*. ¶¶ 51, 55. When the Dona Ana County Sheriff attempted to

serve the Writs, however, De La Vega's agent advised the Sheriff that he "would not be able to

collect any property on the Writs and [that] Dr. De La Vega was not going to be paying anything."

*Id*. ¶ 56 (citing ECF 10-3 ¶ 4). According to Plaintiff, De La Vega's agent made this statement

because she knew De La Vega had already transferred millions of dollars in assets to MCI. *Id*.

¶ 58. Plaintiff further alleges that De La Vega frustrated collection efforts by giving false testimony

as to the location of medical equipment subject to seizure, providing an address that did not exist.

*Id*. ¶¶ 60–62. Ultimately, Plaintiff reports that she "was unable to seize any of [De La Vega's]

personal assets because they had all been transferred to . . . MCI." *Id*. ¶ 63.

On November 3, 2020, in the underlying action, Plaintiff filed a motion to pierce the

corporate veil and/or grant a charging lien under NMSA 1978, § 53-19-35. *See* ECFs 10 ¶¶ 128–

---

[4] Plaintiff's FAC refers to testimony by De La Vega that the truck and boat he claimed to retain were purportedly located in the middle of Manhattan, New York, at an address near Times Square. *See* ECF 10 at ¶ 82.

30; 10-8. On January 5, 2021, The Honorable James T. Martin of the Third Judicial District Court denied Plaintiff's motion in a Letter Ruling, determining that the State court lacked jurisdiction to decide the motion's merits because Plaintiff was attempting to assert a new cause of action to pierce the corporate veil of an entity not named as a party in the case. ECFs 10 ¶ 130; 10-8 at 6 (Jan. 5, 2021 Letter Ruling).[5] Plaintiff appealed for the second time, and on June 12, 2023, the New Mexico Court of Appeal's affirmed Judge Martin's denial of her motion. *See* ECFs 10 ¶ 44; 10-7 (Court of Appeals June 12, 2023 decision); 15-1.

**B. Relationship Between De La Vega and MCI**

Plaintiff insists that a Management Agreement between De La Vega and MCI demonstrates that the two parties are "one and the same." ECF 10 ¶ 68; *see also* ECF 10-6 (Management Agreement). For instance, she alleges that, under the terms of that Agreement, De La Vega is the sole decisionmaker for MCI, is free to use MCI's assets without obligation or payment, and is eligible to take loans from MCI without paying interest or being subject to repayment obligations. ECF 10 ¶¶ 64–67. Indeed, the Agreement provides that De La Vega has the sole and absolute authority to sell, dispose of, or use MCI's assets, and to distribute its money. *Id*. ¶ 70.

MCI owns De La Vega's personal residence, making the mortgage payments for that property and receiving no rental payments from De La Vega. *Id*. ¶¶ 75–78. In addition, MCI has paid numerous other personal expenses of De La Vega, to include legal fees, payments for liability arising from three prior discrimination actions/claims, vehicle insurance, life insurance premiums, payments to an ex-wife pursuant to a marital settlement agreement, and child support. *Id*. ¶¶ 94–

---

[5] Throughout this Memorandum Opinion and Order, the Court references both Judge Martin's January 5, 2021 Letter Ruling and the Court of Appeals' June 12, 2023 decision affirming that ruling. In so doing, the Court takes judicial notice of these decisions without converting Defendants' Motion into one for summary judgment. *See Stan Lee Media, Inc. v. Walt Disney Co*., 774 F.3d 1292, 1298 n.2 (10th Cir. 2014) (citing Fed. R. Evid. 201(b)(2); *Estate of McMorris v. C.I.R*., 243 F.3d 1254, 1258 n.8 (10th Cir. 2001)).

101, 115, 140–47. De La Vega reports that he personally owns no real estate and has no bank account, income, or expenses. *Id*. ¶¶ 116–17, 120.

## II.  ISSUES

### A.  Defendants' Primary Arguments

#### 1.  Res Judicata and Issue Preclusion

Defendants contend that Plaintiff previously and unsuccessfully argued in state court that MCI's corporate veil should be pierced for purposes of collecting judgment against De La Vega. *Id*. at 4–9 (citing ECF 5-1 at 2). As a result, Defendants maintain that res judicata and issue preclusion bar Plaintiff's claims here. *Id*. In support, Defendants submit that the issues presented in Plaintiff's FAC are "identical" to those finally and conclusively adjudicated on the merits in state court and on which Plaintiff had a full and fair opportunity to litigate. *Id* at 8.

#### 2.  Failure to State a Claim for Relief under Fed. R. Civ. P. 12(b)(6)

Defendants first contend that the FAC fails to demonstrate the action is timely under the applicable statute of limitations. *Id*. at 9. In addition, Defendants maintain that the New Mexico Limited Liability Act precludes Plaintiff's collection against De La Vega's MCI membership interest. *Id*. at 9–10 (citing NMSA 1978, § 53-19-35). Finally, Defendants argue that piercing the corporate veil is not an independent or cognizable cause of action and that, in any event, Plaintiff has failed to plead a predicate factual basis to warrant such relief. *Id*. at 11–14.

### B.  Plaintiff's Responses

#### 1.  Res Judicata and Issue Preclusion

Plaintiff responds that neither res judicata nor the related doctrine of issue preclusion applies because the state court did not reach the merits of her alter ego claim but, rather, determined that it did not have jurisdiction to decide whether to pierce MCI's corporate veil. *Id*. In other words,

Plaintiff insists that her corporate veil piercing claim was not, as Defendants suggest, adjudicated on the merits in the underlying action. *Id.*

2.   <u>Failure to State a Claim for Relief under Fed. R. Civ. P. 12(b)(6)</u>

Plaintiff contends that she states a plausible claim for piercing MCI's veil by demonstrating that MCI is the alter ego of De La Vega and that De La Vega used MCI in bad faith to avoid liability for the state court judgment. *Id.* at 16–24.  Insofar as Defendants characterize the current action as untimely, Plaintiff notes that they have failed to identify the date by which she was required to file her claim or to support that position with any legal authority. *Id.* at 16. She also counters with her own allegation of untimeliness: that Defendants' Motion was untimely because Magistrate Judge Damian Martinez's July 18, 2023 Order [ECF 14], which extended the time for Defendants to answer, did not extend the time for Defendants to file a responsive motion. ECF 17 at 28.

## III. STANDARD OF REVIEW

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Otherwise, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss such a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

"To survive a Rule 12(b)(6) motion," *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020), a claim for relief must "contain enough allegations of *fact*, taken as true, to state a claim to relief that is plausible on its face." *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1195 (10th Cir. 2018) (emphasis added) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012)). Consequently, when the Court "evaluat[es] the sufficiency of a complaint," it must "disregard conclusory statements and look only to whether the remaining, *factual* allegations

plausibly suggest the defendant is liable." *Id.* (emphasis added) (quoting *Khalik*, 671 F.3d at 1191). In other words, "'legal conclusions' as well as '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,'" are not "entitled to the assumption of truth." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). Instead, the court is to only "'assume the veracity' of the well-pleaded factual allegations 'and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679); *see also Iqbal*, 556 U.S. at 678 (explaining that such well-pled "factual content [must] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

## IV. ANALYSIS

For the following reasons, the Court holds that (1) Plaintiff's claim is not barred by res judicata or issue preclusion; and (2) Plaintiff states a plausible claim to pierce MCI's veil for purposes of satisfying the state court judgment. Before turning to the merits of Defendants' Motion, however, the Court first takes up preliminary issues addressed by the parties, beginning with the timeliness of the Motion.

Plaintiff observes that Defendants moved for "an extension of 'time . . . to submit **their Answer** to the First Amended Complaint." ECF 17 at 7 (quoting ECF 13). Judge Martinez, in turn, entered an Order extending the time for Defendants to "*file their answer* to Plaintiff's First Amended Complaint." ECF 14 (emphasis added). Because Defendants did not explicitly seek an extension of time for filing a responsive motion, Plaintiff urges the Court to deny their Motion as untimely. ECF 17 at 28–29.  It is true that the plain terms of Judge Martinez's Order specified an extended deadline for Defendants *to answer* and was silent as to any similar extension for filing a responsive motion. *See* ECF 14. And that, no doubt, is because that was all the relief that Defendants sought in their motion for extension.  So Plaintiff's argument rests on firm factual

footing. Moreover, as the Court emphasized at oral argument, Defendants' reply brief offered no response to Plaintiff's untimeliness argument, thereby risking waiver of any argument to the contrary. Hr'g at 4:42–6:16. Nevertheless, because filing an answer and a responsive pleading are procedurally linked in the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 12(a)–(b)[6], and because the Court favors resolution on the merits, the Court will not deny Defendants' Motion on the basis of untimeliness.

Plaintiff asserts a separate procedural ground for denial of Defendants' Motion: the failure to include a recitation of a good-faith request for concurrence as required by Local Rule 7.1(a). ECF 17 at 28–29. The Court's review of Defendants' Motion confirms Plaintiff's position—there is neither a reference to Local Rule 7.1(a) nor any statement resembling a recitation in compliance with that rule. *See* ECF 15; *see also* D.N.M. LR-Civ. 7.1(a) ("Movant must determine whether a motion is opposed, and a motion that omits recitation of a good-faith request for concurrence may be summarily denied.") Although the Court does not condone the practice of assuming non-concurrence, even in the context of a motion to dismiss, there is as a practical matter no question that the issues in Defendants' Motion are hotly contested. Defense counsel would do well to remember in the future that failure to comply with Local Rule 7.1(a) risks the requested relief being summarily denied. Given that the Motion was fully briefed and argued, however, the Court declines to deny Defendants' Motion on this procedural basis.

The Court next considers the undeveloped assertion in the concluding portion of Defendants' Motion that "[t]he Court lacks both personal and subject matter jurisdiction over [Plaintiff's] claims." ECF 15 at 14. In her response brief, Plaintiff insists that the Court has both

---

[6] In the Court's experience, it is customary for federal court defendants to request an extension of time to answer *or otherwise respond* to a plaintiff's complaint. The Court accepts defense counsel's representation that he intended his requested extension to apply to filing a motion and not just an answer.

personal jurisdiction over Defendants and subject matter jurisdiction pursuant to 28 U.S.C. § 1332. ECF 17 at 13–14. As to subject matter jurisdiction, Plaintiff notes that her FAC alleged she was a citizen of Texas and that at the filing of the original Complaint, De La Vega was a citizen of New Mexico and MCI was a citizen of both New Mexico and Colorado. *Id*. (citing ECF 10 ¶¶ 7–10). Notably, Plaintiff's original federal court complaint made the same allegations of citizenship. *See* ECF 1 at ¶¶ 5–9.

At oral argument, the Court asked defense counsel to flesh out Defendant's jurisdictional arguments, in response to which counsel suggested that Plaintiff's alleged Texas citizenship was suspect, given that she resided in New Mexico throughout the underlying state court proceedings. Hr'g at 2:00–3:41. Plaintiff's counsel, on the other hand, represented that there was no reason for the Court to question Plaintiff's allegation that she was a citizen of Texas at the time she filed her complaint in this case. *Id*. at 55:58–56:06. For present purposes, the Court is satisfied that the allegations in Plaintiff's initial complaint and the FAC demonstrate the requisite elements of personal and subject matter jurisdiction.

### A.  Plaintiff's Claim Is Not Barred by Res Judicata or Issue Preclusion

Defendants contend that the FAC "must be dismissed on the basis of res judicata and issue preclusion." ECF 15 at 4. In order to prevail on these related doctrines, Defendants must demonstrate that (1) the issues previously decided were identical to those presented in this case; (2) the prior action was finally adjudicated on merits; (3) the party against whom the doctrine is invoked, Plaintiff here, was a party, or in privity with a party, to the prior adjudication; and (4) Plaintiff had a full and fair opportunity to litigate the issues in the prior action. *See Goodwin v. Hatch*, 781 F. App'x 754, 757 (10th Cir. 2019) (citing *Matosantos Com. Corp. v. Applebee's Int'l,*

*Inc.*, 245 F.3d 1203, 1207 (10th Cir. 2001)). On this much, the parties agree. *Compare* ECF 15 at 7, *with* ECF 17 at 8–9.

Their agreement is short-lived, however, as the parties take two very different views of the state court rulings relevant to the issue preclusion inquiry. In Defendants' view, Judge Martin and the Court of Appeals decided issues "identical" to those raised by Plaintiff's FAC. ECF 15 at 8. Defendants contend that "Judge Martin expressly ruled against Plaintiff's alter ego and corporate veil piercing arguments" and urge the Court not to "entertain Plaintiff's effort to relitigate the very same issues on which she failed before Judge Martin." *Id*. at 13. To his credit, defense counsel tempered this position during oral argument, characterizing Defendants' previous representation of the state courts' decisions as an "overstatement" and conceding that Judge Martin denied Plaintiff's motion on jurisdictional grounds and that the Court of Appeals affirmed on jurisdictional grounds. Hr'g at 7:26–9:34. Still, he persisted with an argument that Judge Martin did not deny the motion to pierce the corporate veil *strictly* on jurisdictional grounds. *Id*. at 10:00– 11:44. In support, defense counsel suggested that Judge Martin had before him factual evidence and arguments of counsel addressing the merits of the motion and that he took into consideration such evidence and arguments in issuing his Letter Ruling. *Id*. at 11:08–11:58. Plaintiff, in contrast, insists that neither Judge Martin nor the Court of Appeals decided the issues presented in this case but, instead determined that they lacked jurisdiction to decide whether to pierce MCI's corporate veil. ECF 17 at 9–11. Plaintiff has the better view.

As mentioned above, Plaintiff attempted to enforce the judgment she obtained against De La Vega by filing a post-judgment motion in the underlying action to pierce MCI's corporate veil or, alternatively, to grant a charging lien pursuant to N.M. Stat Ann. § 59-19-35. ECF 5-1 at 1. Judge Martin unequivocally held that he lacked jurisdiction to entertain Plaintiff's motion. *Id*. at

6. He offered three reasons for that ruling: (1) the state court was "unable to join a new cause of action in [that] proceeding, which was never pled or litigated at trial"; (2) "the proposals laid out in Plaintiff's [m]otion would appear to require the [c]ourt [to] disregard requirements for pleadings, discovery, rules of procedure[,] as well as rules of evidence"; and (3) Plaintiff was "attempting to create a new cause of action to pierce the corporate veil of a new party entity." *Id*. Judge Martin reserved ruling as to Plaintiff's alternative request for a charging lien under N.M. Stat Ann. § 59-19-35, explaining that it was "unclear" what interest Plaintiff would have as an assignee and suggesting that additional discovery was necessary. *Id*. at 7. Although Judge Martin discussed at length the merits-based arguments of the parties as they related to Plaintiff's motion to pierce MCI's corporate veil, he did not decide those issues, instead resting his decision firmly on jurisdictional grounds. *See id*. at 1–6.

The New Mexico Court of Appeals affirmed Judge Martin's denial of Plaintiff's motion to pierce MCI's corporate veil. ECF 15-1 at 3. The court clarified that Plaintiff's request was more precisely a request for "'outside reverse veil piercing,' which 'occurs when a claimant seeks to disregard the separate existence of a corporation and obtain the assets of that entity due to the actions of the dominant shareholder or other corporate insider." ECF 15-1 at 4–5 (quoting *In re Phillips*, 139 P.3d 639, 641 (Colo. 2006)). Acknowledging that New Mexico courts had not *directly* addressed whether outside reverse veil piercing was permitted under New Mexico law, the court found that it need not resolve that issue, as Judge Martin's decision was constrained to jurisdictional and procedural grounds. *Id*. at 5.

As to those grounds, the New Mexico Court of Appeals found no error. *See id*. The court reasoned that it was "well established" under New Mexico law that joinder and proper service of process are prerequisites to the exercise of jurisdiction over an entity and for rendering a binding

judgment against it. *Id*. at 3 (citing *Ortiz v. Shaw*, 193 P.3d 605, 611 (N.M. Ct. App. 2008)). Consequently, because Plaintiff did not join MCI as a party nor serve it with process in the underlying action, the Court of Appeals agreed with Judge Martin that the state court lacked jurisdiction over MCI. *Id*. at 3. The Court of Appeals rejected Plaintiff's position that the trial court erred in denying her motion on jurisdictional grounds because MCI was, as she put it, "functionally before the court" as De La Vega's alter ego. *Id*. at 4. Indicating that it was "dubious of the proposition that a court may exercise personal jurisdiction over a non-party," the Court of Appeals emphasized that "no court ha[d] yet determined that MCI [was], in fact, the alter ego of Defendant De La Vega." *Id*. at 6 (citing *Ortiz*, 193 P.3d at 611; *New Mexico ex rel McGill v. Bassett*, 528 P.3d 739, 744 (N.M. Ct. App. 2023; *Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 389–91 (4th Cir. 2018)). The court further reasoned that the alter ego finding Plaintiff sought would "depend[] largely on the resolution of questions of fact." *Id*. at 7 (quoting *Sky Cable, LLC*, 886 F.3d at 389). Emphasizing that it was not within the purview of an appellate court to decide such facts, the Court of Appeals declined to make an alter ego finding in the first instance. *Id*. at 7 (citing *Sky Cable, LLC*, 886 F.3d at 389; *New Mexico v. Gonzales*, 975 P.2d 355, 357–58 (N.M. Ct. App. 1998)).

Because both Judge Martin and the Court of Appeals limited their holdings to jurisdictional grounds (i.e., that the state court lacked jurisdiction over MCI), this Court has little trouble concluding that the issues presented in this case are *not* identical to the issues adjudicated in the underlying action. Indeed, there was no final adjudication on the merits of Plaintiff's state court motion to pierce the corporate veil. As a result, she has not yet enjoyed a full and fair opportunity

to litigate to resolution the issues raised here. For these reasons, res judicata and issue preclusion have no application to this case.

**B. Plaintiff's Claim for Piercing the Corporate Veil States a Claim for Relief that May Be Granted under Fed. R. Civ. P. 12(b)(6).**

Under the umbrella of Rule 12(b)(6), Defendants assert: (1) that Plaintiff's FAC is untimely; (2) that her claims are precluded by the New Mexico Limited Liability Act; and (3) that piercing the corporate veil is not an independent or cognizable cause of action for which Plaintiff pled an adequate factual basis warranting relief. ECF 15 at 9–15. The Court addresses each argument in turn.

**1.   Plaintiff's FAC is not barred by any applicable statute of limitations.**

Defendants maintain that because Plaintiff last worked for Southwest Health Services in 2016, the derivative claim asserted in this case is barred by any applicable statute of limitations. *Id*. at 15. Defendants do not identify the applicable statute of limitations in their briefing, but at oral argument, defense counsel opined that New Mexico's three-year catchall limitation would apply if the Court were to recognize reverse piercing the corporate veil as a cognizable cause of action. Hr'g at 44:45–47:30. Despite this representation and Plaintiff's counsel's failure to refute application of a three-year limitation period, the Court questions whether a longer, four-year limitation period may be more suited to the claim in this case. *See* NMSA 1978 § 37-1-4 (providing that claims "brought for injuries to property or for the conversion of personal property or for relief upon the ground of fraud, and all other actions not herein otherwise provide for and specified" are subject to a *four-year* limitation period). Regardless, the Court is satisfied that Plaintiff's claim is not barred even applying the shorter three-year limitation period suggested by defense counsel.

Plaintiff's counsel posits that the most logical triggering event from which the limitations clock began to run was the Court of Appeals' decision affirming Judge Martin's denial of

Plaintiff's motion to pierce the corporate veil. *Id*. at 1:02:44–1:04:44. It was in this decision, Plaintiff submits, that the court answered the outstanding question of whether the state court had jurisdiction to pierce MCI's corporate veil to satisfy the judgment against De La Vega. *Id*. Plaintiff emphasizes that she filed her FAC within eight days of the Court of Appeal's decision on this issue. *Id*. at 1:04:30–1:04:44. In the alternative, Plaintiff's counsel suggests that the limitations clock was triggered, at the earliest, when Plaintiff discovered that De La Vega had no financial existence outside of MCI. *Id*. at 1:03:09–1:04:29. Plaintiff's counsel pinpoints the timing of this discovery at shortly before Plaintiff filed her motion to pierce the corporate veil in the underlying action. *Id*. Plaintiff filed her initial federal court complaint on May 3, 2023 [ECF 1], and she filed her state court motion to pierce the corporate veil six months shy of three years before that, on November 3, 2020. *See* ECF 5-1 at 1. Thus, applying either trigger date identified by Plaintiff's counsel, Plaintiff's federal complaint was filed within three years of the date her claim accrued.

For their part, Defendants identify two different potential triggering dates: the last date of Plaintiff's employment with Southwest Health Services (i.e., 2016) [*see* ECF 15 at 15], or the date the state court judgment was entered (i.e., February 13, 2020) [Hr'g at 45:15–46:20]. But these dates effectively disregard the allegations underlying Plaintiff's claim: that De La Vega transferred assets to MCI *after* judgment was entered in state court in order to avoid paying the judgment against him. *See* ECF 10 ¶ 87 ("Post-Judgment, Defendant DLV transferred all of his valuable personal assets to his alter-ego, Defendant MCI.").

The Court finds the most logical triggering date to be Plaintiff's alleged post-judgment discovery that De La Vega transferred his assets to MCI, which Plaintiff's counsel represented was around the time Plaintiff filed her motion to pierce the corporate veil in state court. *See* N.M.S.A. 1978 § 37-1-7 ("In actions for relief, on the grounds of fraud or mistake, and in actions for injuries

to, or conversion of property, the cause of action shall not be deemed to have accrued until the fraud, mistake, injury or conversion complained of, shall have been discovered by the party aggrieved."). Notably, Defendants do not dispute Plaintiff's timeline, other than to argue that Plaintiff's allegations regarding the post-judgment transfer of assets are false. *See, e.g*., Hr'g at 13:55–14:11. Thus, where Plaintiff's initial federal complaint was filed less than three years after Plaintiff moved to pierce MCI's corporate veil, and Defendants have not identified a more appropriate triggering date for purposes of the applicable statute of limitations, the Court will deny Defendants' Motion on this ground.

### 2. The New Mexico Limited Liability Act does not foreclose Plaintiff's claim for piercing MCI's veil.

Defendants submit that "New Mexico law precludes the remedies Plaintiff again pursues in this Court, [which were] previously rejected in . . . state court." ECF 15 at 9. Specifically, Defendants rely on the New Mexico Limited Liability Act, NMSA 1978, § 53-19-35, for protection, asserting that the provisions of that Act effectively prevent the Court from piercing MCI's corporate veil to satisfy a judgment against one of its members. ECF 15 at 9–10.

Section 35 of the Limited Liability Act provides:

On application to a court by any judgment creditor of a member, the court may charge the interest of the member with payment of the unsatisfied amount of the judgment, with interest. To the extent so charged, the judgment creditor has no more rights than those to which an assignee of the member's limited liability company interest would be entitled under the provisions of Section 32 of [the] Act. That act does not deprive any member of the benefit of any exemption laws applicable to his membership interest.

NMSA 1978, § 53-19-35. Section 32, to which Section 35 refers, specifies that an assignee is only entitled to receive "distributions and return of capital to which the assignor would be entitled with respect to the interest he assigned if he had not assigned such interest." NMSA 1978, § 53-19-32. In light of these provisions, Defendants maintain that Plaintiff "is not authorized to exercise any

greater rights than by distributions or the return of capital *to which an assignor* would be entitled." ECF 15 at 10.

As the Court understands the arguments, Defendants are contending that Plaintiff's attempt to reach the not-yet-distributed assets held by MCI through veil piercing is at odds with protections conferred by the Act. In addition, Defendants suggest that Judge Martin already "correctly ruled" in the underlying action that the Limited Liability Act forecloses Plaintiff's attempts at veil piercing. *Id.* at 9. The Court reads Judge's Martin's Letter Ruling differently, however. As discussed more fully above, Judge Martin did not reach the merits of Plaintiff's motion to pierce MCI's corporate veil, determining instead that the court lacked jurisdiction to decide this motion. *See supra* Section IV.A. Although he *did* outline Defendants' arguments centered around the Limited Liability Act, he did not decide how any provisions of that Act impacted the motion to pierce MCI's corporate veil. *See* ECF 5-1. Moreover, Judge Martin characterized Plaintiff's request for a charging lien under the Limited Liability Act as an "alternate" theory to her corporate veil piercing request. *See* ECF 5-1 at 7. As to this alternate request, he explained that additional discovery was necessary before determining the extent of Plaintiff's interest as a judgment creditor under the Limited Liability Act. ECF 5-1 at 7.

At oral argument, defense counsel refined Defendants' position regarding the operation of the Limited Liability Act, insisting that there is nothing in the language of the Act itself to indicate that veil piercing is a recognized exception to the Act's protections. Hr'g at 21:34–21:46. Defense counsel posited that Plaintiff's requested relief would require the Court to fashion an exception to the Limited Liability Act for which there was no authority. *Id.* Yet, he conceded that veil piercing

is a generally recognized, though not explicit, exception to the Model Corporation Act—the corporate analogue to the Limited Liability Act. *See* Hr'g at 23:30–23:54.

Plaintiff, in contrast, insists that the Limited Liability Act is no obstacle to the relief requested in this case. ECF 17 at 9. She observes that "Defendants provide no legal authority that the Act provides the exclusive remedy available to Plaintiff." ECF 17 at 15–16 (citing *Rios v. Ziglar*, 398 F.3d 1201, 1206 n.3 (10th Cir. 2005) for the proposition that a party's position must be supported with legal authority). Moreover, she reasons that if the Limited Liability Act were the exclusive form of redress available to a judgment creditor in Plaintiff's position, it would lead to the untenable result of "nullify[ing] other statutes, such as the New Mexico Voidable Transfers Act." ECF 17 at 10. At oral argument, Plaintiff's counsel suggested that a New Mexico Court of Appeals decision discussed in her response brief, *Morrissey v. Krystopowicz*, 365 P.3d 20 (N.M. Ct. App. 2015), supports the proposition that, notwithstanding the protections enumerated in the Limited Liability Act, equity will step in to pierce an LLC's corporate veil when the LLC is used for an improper purpose. Hr'g at 1:18:45–1:19:59; *see also* ECF 17 at 7–8 (citing *Morrissey*, 365 P.3d at 25–26).

Although the court in *Morrissey* did not directly address the effect of the Limited Liability Act, the Court agrees that it logically follows from *Morrissey*'s rationale that the Act is not the exclusive remedy available to a judgment creditor of an LLC, so long as she can establish the requisite elements for veil piercing. In *Morrissey*, the court permitted the veils of both a corporation *and an LLC* to be pierced in order to hold accountable the defendant corporation's sole shareholder, who was also the sole member and managing partner of the defendant LLC. *Morrissey,* 365 P.3d at 26. In so holding, the court cited persuasive out-of-state authority for the proposition that "[w]here a corporation [or an LLC] is used for an improper purpose and to

perpetuate injustice by which it avoids its legal obligations, equity will step in, pierce the corporate veil and grant appropriate relief." *Id.* at 25–26 (quoting *Hammett v. Atcheson*, 438 S.W.3d 452, 461 (Mo. Ct. App. 2017) (brackets in original).

Ultimately, Defendants have presented no compelling argument that the Limited Liability Act poses an unsurmountable obstacle to piercing the corporate veil of an LLC. And adopting Defendants' position would, as the Court sees it, render unavailable LLC veil piercing. Absent supporting authority, the Court is unwilling to embrace such a result. Nor have Defendants assuaged the Court's concerns that reliance on the Limited Liability Act at this juncture is premature, where the Act essentially operates as a statutory limitation *on recovery* rather than a device that forecloses any attempt to make out a cause of action against an LLC. Guided by the Court of Appeals' analysis in *Morrissey* and the absence of any statutory language or case law identifying the Limited Liability Act as the *exclusive* source of relief for the judgment creditor of an LLC member, the Court is satisfied that the Act does not stand in the way of Plaintiff's attempt to assert a claim for veil piercing in this case.

### 3. Plaintiff has pled a sufficient factual basis to warrant relief for a cognizable cause of action.

Defendants' final argument is that piercing the corporate veil is not an independent or cognizable cause of action for which Plaintiff pled an adequate factual basis. As Defendants put it, "Plaintiff's First Amended Complaint is devoid of the requisite specificity required of factual allegations to support any cognizable cause of action . . . ." ECF 15 at 10. Implicit in Defendants' position are two sub-arguments: (1) that piercing MCI's corporate veil is not cognizable as an

independent cause of action under New Mexico law; and (2) that the facts alleged do not support the relief Plaintiff seeks.

As to the latter, Defendants allege the following inadequacies: the failure to specify or describe "every single [unlawful] transfer or transaction"; the failure to plead facts suggesting MCI was created for an unlawful purpose; the failure to plead facts that MCI was undercapitalized at inception; and the failure to plead facts that MCI was not operated in a legitimate fashion. ECF 15 at 11–14. In response, Plaintiff insists that the First Amended Complaint contains sufficient factual allegations to satisfy Rule 12(b)(6) and to support each of the three elements for piercing MCI's veil: (1) instrumentality or domination of MCI by De La Vega; (2) improper purpose; and (3) proximate causation of harm to Plaintiff. ECF 17 at 16 (citing *Morrissey*, 365 P.3d at 23–24). Even if they disagree as to other aspects of corporate veil piercing, the parties identify the same requisite elements under New Mexico law. *Compare* ECF 17 at 16, *with* ECF 15 at 13. Nevertheless, Defendants contend that Plaintiff's allegations in support of these elements are inadequate, conclusory, and false. ECF 15 at 11–14.

First, Defendants observe that the First Amended Complaint fails to specify the dates and manner of transfer of assets by De La Vega to MCI. *Id*. at 11–14. Plaintiff describes this argument as "a red herring." ECF 17 at 24. She argues, and the Court agrees, that she is "not required to identify every single transfer or transaction supporting her Piercing Claim." *Id*. Defense counsel conceded at oral argument that Plaintiff need not specify every asset allegedly transferred to MCI post-judgment. Hr'g at 26:25–27:26. Still, he argued that, at minimum, Plaintiff should be required to allege factual allegations to support at least one such transfer. *Id*.; *see also* Hr'g at 1:24:05–1:24:54. But this concession does not salvage Defendants' argument, for which they fail to provide any authority in support. Absent any statutory authority or case law suggesting otherwise, the

Court concludes that the failure to allege the specific dates and manner of transfer of any assets, or even of *one* asset, is not fatal to Plaintiff's claims at the motion to dismiss stage. *See Cf. Desmond v. Taxi Affiliation Servs.*, LLC, 344 F. Supp. 3d 915, 926 n.3 (N.D. Ill. 2018) (reasoning that, even under Fed. R. Civ. P. 9(b)'s heightened pleading standard, a plaintiff need not plead specific transaction dates "when the alleged conduct spans a significant time period or involves numerous occurrences"). In other words, Plaintiff states a plausible claim for piercing the corporate veil, even without such details. As discussed below, Plaintiff offers non-conclusory factual allegations to support each element of corporate veil piercing.

Plaintiff points to the following allegations in support of the first element of her cause of action (i.e., instrumentality or domination of MCI by De La Vega): (1) MCI owns De La Vega's residence but charges him no rent; (2) De La Vega claims a personal mortgage deduction on his individual tax returns for mortgage payments made by MCI; (3) De La Vega uses MCI's funds to pay for personal expenses, such as spousal and child support obligations; (4) MCI paid money on three occasions to resolve individual legal claims against De La Vega; (5) MCI paid for De La Vega's legal fees in cases where De La Vega was an individual defendant and where MCI was not a party; (6) the management agreement between MCI and De La Vega provides that De La Vega may use MCI assets without obligation or repayment and may take loans from MCI without any interest or repayment obligations. ECF 17 at 16–19 (citing *Estate of Bishop v. Mulholland,* No. 30,016, 2011 WL 5397134 (N.M. Ct. App. Sept. 15, 2011); *Trs. of the Michiana Area Elec. Workers Pension Fund v. La Place's Elec. Co.*, No. 2:14-CV-244-TLS, 2018 WL 3833529 (N.D. Ind. Aug. 10, 2018)).

With respect to the second element, Plaintiff highlights the following allegations, which support an inference of an improper purpose: (1) Defendant is undercapitalized in that De La Vega

has no personal bank account, no personal income or expenses, and purportedly no significant net worth apart from his interest in MCI; (2) De La Vega has diverted his personal assets to MCI in an attempt to render himself judgment proof; (3) prior to judgment, De La Vega represented that he had personally held assets valued at tens of millions of dollars, but after judgment he represents he is destitute; and (4) De La Vega obstructed the state court's writs of execution by providing false testimony regarding the location of assets and indicating that medical equipment was located at an address that did not exist. ECF 17 at 19–22.

Finally, as to proximate cause, Plaintiff insists that the following allegations plausibly demonstrate that a cooperative effort between De La Vega and MCI to avoid satisfaction of the judgment caused her injury: (1) the Management Agreement states that De La Vega is the only manager and owner of MCI and its sole decisionmaker and, additionally, MCI pays for all of De La Vega's expenses; (2) Plaintiff suffered losses due to the cooperative efforts of MCI and De La Vega aimed at avoiding satisfaction of the judgment against De La Vega. ECF 17 at 22–23.

In the context of the second and third elements, Plaintiff makes much of De La Vega's trial stipulation in which he stated that his net worth was approximately $25 million. ECF 17 at 20, 23. Defendants submit that she "ignores that Dr. De La Vega's stated net worth included principally the valuation of his interest as a member of MCI." ECF 15 at 11. Defense counsel expanded upon this position at oral argument, when he represented that the trial stipulation accurately reflected De La Vega's financial circumstances at trial, whereby his net worth included his membership interest in the LLC. Hr'g at 14:20–16:24, 19:55–20:40. But the trial stipulation is not the only factual allegation underlying Plaintiff's assertion of a post-judgment assets transfer. *See* ECF 17 at 25. Plaintiff also alleges that prior to trial, De La Vega "represented that he *personally* owned" $3 million in artwork, more than $25 million in real estate, and more than $22 million in real estate

in Mexico. ECF 10 ¶¶ 35–37. At oral argument, Plaintiff's counsel explained that these representations were made in the context of responses to requests for production in the underlying State court action. Hr'g at 59:25–1:00:41. Critically, Plaintiff's FAC further alleges that *after judgment* De La Vega reported that he had no personal assets worth more than $5,000. ECF 10 ¶ 113 (citing ECF 10-19 at 11:24–12:8).

Construing the asset-related allegations in Plaintiff's complaint in her favor, the Court finds that there is a reasonable inference to suggest that De La Vega transferred substantial assets to MCI post-judgment in an effort to avoid paying the State court judgment. Although Defendants characterize many of Plaintiff's allegations as "false," the Court finds arguments as to the veracity of Plaintiff's allegations better suited to a later stage of the proceedings. At the motion to dismiss stage, the Court is satisfied that the First Amended Complaint contains sufficiently specific allegations of fact, which, *taken as true*, plausibly demonstrate an entitlement to pierce MCI's veil.

Alternatively, Defendants contend that Plaintiff has not asserted against them an independent or cognizable cause of action. ECF 15 at 12. In their briefing, Defendants offer only two sentences in support of this position: "Plaintiff's First Amended Complaint purports to assert a single cause of action, that is to 'pierce the corporate veil.' But this is not an independent or cognizable cause of action." *Id*. Plaintiff's characterization of this argument as "undeveloped" is certainly fair. *See* ECF 17 at 26 (citing *Bird v. Regents of N.M. State Univ.*, 619 F. App'x 733, 748 (10th Cir. 2015) for the proposition that arguments are waived when "conclusory, unsupported, and undeveloped"). To be sure, Defendants should have better developed this argument and offered authority to support their position.[7] But Plaintiff, too, offered remarkably minimal

---

[7] Plaintiff observes that in the state court action, De La Vega maintained the opposite position: that piercing the corporate veil was solely a cause of action, not equitable relief. ECF 17 at 26 (citing ECF 17-1). Although the Court finds defense counsel's attempt to reconcile the two divergent positions unsatisfying, it need not address this

discussion of this issue in her briefing. *See* ECF 17 at 26. At oral argument, Plaintiff's counsel suggested that the Court of Appeals' decision in the underlying action acknowledged the availability of an independent cause of action aimed at piercing MCI's corporate veil. Hr'g at 50:10–52:07. Some discussion of that decision is warranted.

The Court of Appeals acknowledged Plaintiff's position that "it was not possible to name MCI in the underlying litigation because the asset transfer occurred after trial." ECF 15-1. Clarifying that "[t]he timing of the alleged asset transfer . . . [did] not provide a basis for excusing joinder and service of process," the court focused its inquiry on whether Plaintiff could have otherwise sought relief from MCI after the judgment was entered against De La Vega. *See* ECF 15-1 at 5. But on this question, the court found little guidance. ECF 15-1 ("[V]ery little has been written about the procedure for asserting an alter ego claim, particularly under circumstances where the basis for doing so arises *after trial*." (citing Gay Macarol, *Veil Piercing and Fraudulent Transfer Avoidance in Supplemental Proceedings: How Expanding Statutory Remedies and Enforcement Jurisdiction Can Promote Judicial Economy and Facilitate Judgement Collection*, 50 J. Marshall L. Rev. 279 (2017))). Even so, the court highlighted two possible avenues for Plaintiff to obtain relief against MCI. First, and perhaps most relevant for present purposes, it suggested that Plaintiff could bring an independent action against MCI. ECF 15-1 at 7. Second, the court hypothesized that "it may [have] be[en] possible to bring MCI [into the underlying state court action] through supplemental proceedings" authorized by Rule 1-015(D). ECF at 15-1 at 5. With respect to this second option, the court conceded that "New Mexico courts have not expressly addressed or explored the scope of a district court's supplemental jurisdiction to enforce [its]

---

previously-asserted position, nor convert Defendants' motion to one for summary judgment, in order to resolve the issue before the Court.

judgment."[8] ECF 15-1 at 5–6 (citing *Prudential Ins. Co. of Am. v. Anaya*, 428 P.2d 640, 646 (N.M. 1967); Wright & Miller, Federal Practice and Procedure §§ 1507, 1509 (2023)).

The court explained that it was "satisfied . . . that there [was] at least one procedural vehicle available to name and serve MCI." *Id*. at 8. Based on a careful reading of the Court of Appeals' analysis, the Court understands that the remaining vehicle to which the court alluded was an *independent action* naming MCI as a defendant and seeking recovery on the judgment issued against De La Vega. The instant case is just such an independent action, albeit filed in federal court.   But even if this is not what the Court of Appeals meant to convey, separate authority cited by Plaintiff in her response brief supports the notion that piercing the corporate veil may constitute a standalone cause of action under New Mexico law. Helpfully, the procedural posture of *Estate of Bishop* mirrors that of the present case. There, the New Mexico Court of Appeals affirmed the trial court's authorization of relief in the context of a standalone piercing the corporate veil claim. *Estate of Bishop*, 2011 WL 5397134 at \*1–5. Defendants did not discuss or distinguish *Estate of Bishop* in their briefing. At oral argument, however, defense counsel suggested that it would require a leap in logic for the Court to find that the case supports recognizing the viability of a standalone cause of action. Hr'g at 31:37–33:14, 33:45–35:17. It is true that the *Estate of Bishop* did not directly or explicitly hold that piercing the corporate veil may be asserted as an independent cause of action under New Mexico law. *See generally, Estate of Bishop*, 2011 WL 5397134. Yet,

---

[8] Continuing its discussion of the second possible avenue for seeking relief from MCI, the court discussed *Blizzard Energy, Inc. v. Schaefers*, 286 Cal. Rptr. 3d 658 (Ct. App. 2021). ECF 15-1 at 7. In *Blizzard Energy*, a California Court of Appeal affirmed the lower court's decision to add an alter ego LLC, pursuant to the outside reverse veil-piercing doctrine, as a judgment debtor to a Kansas judgment. *Id*. The New Mexico Court of Appeals highlighted a distinguishing feature of *Blizzard Energy*:  the procedure for adding an alter ego as a judgment debtor to an existing judgment was "specifically authorized under a well-developed body of statutory and common law authority." ECF 15-1 at 9 (citing *Blizzard*, 286 Cal. Rptr. 3d at 669). Neither Plaintiff nor the New Mexico Court of Appeals identified analogous authority under New Mexico law. *See id*. Ultimately, because the parties did not adequately brief the issue of joining MCI in the underlying action, the New Mexico Court of Appeals declined to resolve the feasibility of such a post-judgment procedure. *See id*.

the court's authorization of relief based upon a standalone cause of action for piercing the corporate veil, together with the Court of Appeals' suggestion in the underlying state court action that Plaintiff could bring an independent action to recover from MCI, satisfy the Court that Plaintiff's FAC states a claim for relief under the Rule 12(b)(6) standard.

The Court acknowledges that a related issue will likely require additional consideration and briefing as this case progresses—that is, whether New Mexico recognizes the theory of outside *reverse* piercing the corporate veil. As the New Mexico Court of Appeals observed in the underlying action, "New Mexico courts have not squarely addressed whether reverse veil piercing is permitted under New Mexico law and under what circumstances." ECF 10-7 at 5 (citing Lara Spitz, *The Case for Outside Reverse Veil Piercing in New Mexico*, 51 N.M. L. Rev. 349, 352 (2021)). In any event, the parties have not adequately addressed the issue,[9] and the Court will not determine on present briefing whether New Mexico would recognize this variety of veil piercing.

Ultimately, the Court concludes that Plaintiff has plausibly alleged a cause of action for piercing MCI's veil to satisfy the judgment issued against De La Vega in the underlying action.

---

[9] In a footnote to their Motion, Defendants mention that "[t]he Court of Appeals . . . accurately recognized no New Mexico authority exists for doing a 'reverse' piercing." ECF 15 at 3 n.3. But simply highlighting this issue, without any citation to case law or discussion of the implications of the doctrine, does not suffice to properly present this less-than-straightforward issue to the Court. Moreover, Defendants' representation is not entirely accurate. More precisely, the Court of Appeals indicated that "New Mexico courts have not *squarely* addressed whether reverse veil piercing is permitted under New Mexico law and under what circumstances." ECF 10-7 (citing Lara Spitz, *The Case of Outside Reverse Veil Piercing in New Mexico*, 51 N.M. L. Rev. 349, 352 (2021) (emphasis added). Indeed, the court acknowledged, albeit through a parenthetical quote from a law review article, that the New Mexico Supreme Court *has* applied the doctrine of reverse corporate veil piercing "without naming it." *See id.* (quoting Spitz's law review article in which she opined that "The New Mexico Supreme Court has not explicitly considered reverse veil piercing, although it has applied the doctrine without naming it."); *see also Addison v. Tessier*, 335 P.2d 554 (N.M. 1959) (disregarding the legal entity of a corporation for purposes of satisfying a judgment against its controlling shareholder, where the corporation was being used as a "device to shield [the controlling shareholder] from the attacks of creditors"). Plaintiff similarly relegates her discussion of reverse corporate veil piercing to a footnote, where she asserts that "[w]hile Defendant[s] attempt[] to distinguish traditional veil piercing and reverse veil piercing, the difference is 'not worth mentioning.'" ECF 17 at 9 (quoting *United States v. Badger*, 818 F.3d 563, 571 (10th Cir. 2016)). While the Court does not agree that the Tenth Circuit itself found distinctions between the two varieties of veil piercing not worth mentioning, the court *does* discuss the doctrine of reverse veil piercing under Utah law and provides helpful guidance for the Court's task of predicting whether the New Mexico Supreme Court would recognize the doctrine. Nevertheless, the Court declines to make such a prediction absent full briefing on the issue.

Accordingly, the Court will permit Plaintiff to maintain her singular cause of action against Defendants.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff plausibly states a cause of action against Defendants for piercing the corporate veil under New Mexico law, and her claim is not barred by res judicata, issue preclusion, or the applicable statute of limitations, **IT IS ORDERED** that the Motion is **DENIED**.

**SO ORDERED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
***Presiding by Consent***