UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

ASHLEY IMMING,

      Plaintiff,

v.
                                     Civ. No. 23-378 GJF/DLM

OSVALDO DE LA VEGA, MESILLA
CAPITAL INVESTMENTS, LLC,
SOUTHWEST HEALTH SERVICES,
P.A., and MESILLA CAPITAL
INVESTMENTS De MEXICO, S. de R.L.,

      Defendants.

## AMENDED[1] MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Summary Judgment Motion to Pierce Defendant Mesilla Capital Investments, LLC's Veil [ECF 174] ("Plaintiff's Motion for Partial Summary Judgment"); Defendants' Motion for Partial Summary Judgment[2] [ECF 175]; and Plaintiff's Motion for Partial Summary Judgment as to the Second Element for Count I, Piercing

---

[1] On February 14, 2025, the Court entered its Memorandum Opinion and Order denying Plaintiff's Summary Judgment Motion to Pierce Defendant Mesilla Capital Investment, LLC's Veil [ECF 174], Defendants' Motion for Partial Summary Judgment [ECF 175], and Plaintiff's Motion for Partial Summary Judgment as to the Second Element for Count I, Piercing [ECF 171]. On March 4, 2025, the Court held its final pretrial conference during which Plaintiff's counsel confirmed that, with respect to Plaintiff's claims against Mesilla Capital Investments, LLC ("MCI"), she was no longer proceeding on a theory that Defendant Osvaldo De La Vega actually *transferred* assets that he personally owned to MCI during the underlying state court litigation or prior to or after the state court judgment. *See* Hr'g at 43:26–44:04, 1:38:22–1:40:10 (Liberty audio recording); *see also* ECF 116 ¶ 194 (alleging, in Count I of the Second Amended Complaint, that DLV "*hid* assets in Defendant MCI in order to make himself judgment proof") (emphasis added). As such, the Court withdraws its February 14, 2025 Memorandum Opinion and Order and substitutes this Amended Memorandum Opinion and Order to better comport with the theory and allegations on which Plaintiff is proceeding in her Second Amended Complaint.

[2] Although entitled "Defendants' Motion for *Partial* Summary Judgment," the Court observes that Defendants address all six counts of Plaintiff's Second Amended Complaint and "request the Court enter judgment by summary judgment against Plaintiff on *all* causes." ECF 175 at 1, 4–5, 23 (emphasis added). Yet Count II, Count III, and Count VI of Plaintiff's Second Amended Complaint are asserted against Mesilla Capital Investments de Mexico, S. de R.L. ("MCI Mexico"), a defendant against whom a Default Judgment has been entered. *See* ECFs 116 at 34, 38, 46; ECF 155. Thus, the proper movants are limited to Osvaldo De La Vega, Mesilla Capital Investments, LLC, and Southwest Health Services, P.A., and summary judgment is unavailable with respect to Plaintiff's claims against MCI Mexico.

[ECF 171] ("Plaintiff's Motion for Sanctions"). All three motions are fully briefed [*see* ECFs 177–80; 192]. Having thoroughly considered the filings and arguments, the record evidence, and the relevant law, the Court concludes that none of these motions are well-taken and each will be **DENIED**, with the Court **RESERVING** ruling on the legal issue of whether the New Mexico Supreme Court would adopt outside reverse veil piercing as a valid legal theory.

## I.    BACKGROUND[3]

Between July 2015 and July 2016, Plaintiff was employed by Defendant Southwest Health Services, P.A. ("Southwest Health"), a medical practice owned by Defendant Dr. Osvaldo De La Vega ("De La Vega"). Defs.' Mot. for Partial Summ. J., Undisputed Fact (hereinafter "Defs.' UF") ¶ 7, ECF 175. During that employment, Plaintiff also performed some work for an entity called Mesilla Capital Investments, LLC ("MCI") as directed by De La Vega. Defs.' UF ¶ 8, ECF 175.

On February 13, 2017, Plaintiff sued De La Vega in state court alleging, among other things, that she endured sexual harassment during her employment with Southwest Health. Pl.'s Mot. for Partial Summ. J., Undisputed Fact (hereinafter "Pl.'s UF") ¶ 1, ECF 174; ECF 116 ¶ 64. After a jury verdict in Plaintiff's favor, the state court entered Final Judgment against De La Vega and Southwest Health on February 13, 2020. Pl.'s UF ¶ 2, ECF 174. De La Vega appealed but did not post a bond. Pl.'s UF ¶ 4, ECF 174. The New Mexico Court of Appeals affirmed the district court's Final Judgment. Pl.'s UF ¶ 5, ECF 174.

---

[3] The facts that follow come from Plaintiff's Motion for Partial Summary Judgment [ECF 174], Defendants' Motion for Partial Summary Judgment [ECF 175], and the response and reply briefs that correspond to those motions. The facts set forth in this section are not "specifically controverted" with competent evidence by the non-moving party. *See* D.N.M. LR-Civ. 56.1. The Court notes that in their combined response to Plaintiff's Motion for Partial Summary Judgment and Motion for Sanctions, Defendants accuse Plaintiff of "fail[ing] to enumerate a statement of factual allegations with citations to the record." ECF 177 at 5. Defendants suggest that "[w]ithout other means of responding with greater specificity, [they] must deny all factual allegations located throughout Plaintiff's motions." *Id.* Defendants' blanket denial is ineffective, not least because, as discussed below, Plaintiff's Motion for Partial Summary Judgment *did* set out statements of fact with citations to the record. *See* ECF 174 at 2–13.

During the state court proceeding, De La Vega identified more than $29 million in personally held assets, including vehicles, artwork, and real estate. Pl.'s UF ¶ 3, ECF 174. In February 2018, while the state court proceedings were ongoing, De La Vega sold the assets of Southwest Health for $1.2 million. Pl.'s UF ¶ 62, ECF 174. Although the sale of Southwest Health was completed in February 2018, De La Vega reports that he "began negotiations for the sale" sometime in 2016. Defs.' UF ¶ 6, ECF 175; Defs.' Resp. to Pl.'s Mot. for Partial Summ. J., Additional Undisputed Fact (hereinafter "Defs.' AUF") ¶ 10, ECF 177 (citing ECF 177, Ex. B ¶ 10).

Plaintiff attempted to collect on the state court's Final Judgment by obtaining Writs of Execution and Writs of Garnishment. Pl.'s UF ¶ 6, ECF 174. On August 18, 2020, a deputy with the Doña Ana County Sheriff's Office served a copy of two Writs of Execution on De La Vega's agent. Pl.'s UF ¶ 7, ECF 174. Although De La Vega's agent accepted service of the Writs, she told the deputy: "Dr. De La Vega was not going to be paying anything." Pl.'s UF ¶ 8, ECF 174.

De La Vega created Mesilla Capital Investments, LLC ("MCI"), a New Mexico limited liability company, in March 2004. Defs.' UF ¶ 1, ECF 17. At all times, De La Vega has been the 100% owner and only managing member of MCI. Pl.'s UF ¶ 11–12, ECF 174. The business purpose of MCI is and always has been the "acquisition, management, investment, trade, lease, purchase, and sale of real estate property or properties in the United States."[4] Pl.'s UF ¶ 51, ECF 174; *see also* Defs.' UF ¶ 2, ECF 175; Pl.'s Resp. to Defs.' UF ¶ 2, ECF 178; ECF 175, Ex. C.

---

[4] Rejecting Defendants' characterization of MCI's purpose, Plaintiff recounts that De La Vega testified that MCI's purpose was the "acquisition, management, investment, trade, lease, purchase, and sale of real estate property or properties **in the United States**." Pl.'s Resp. to Defs.' UF ¶ 2. Plaintiff further disputes Defendants' factual allegations to the extent they state that MCI has "continuously existed and operated for" its stated purpose. Pl.'s Resp. to Defs.' UF ¶ 2. Plaintiff argues that, instead, MCI has been used for *improper* purposes, to include serving as a "personal piggy bank" for De La Vega" and "to conceal domestic assets . . . to avoid the Final Judgment." *Id*. Defendants do not respond [*see* ECF 192] and thereby effectively concede the factual distinctions Plaintiff makes with respect to their assertions of fact.

According to De La Vega, he relied on the advice and direction of his attorney and accountants in forming MCI to lawfully gain favorable tax treatment and to limit his personal liability and that of MCI and MCI's assets.[5] Defs.' AUF ¶¶ 11–13, ECF 177. Since its creation, MCI has acquired and owns multiple properties including three residential properties and approximately 22 commercial properties. Defs.' AUF ¶ 15, ECF 177.

Pursuant to a Management Agreement between De La Vega and MCI, De La Vega serves as MCI's sole manager and decisionmaker, and in lieu of receiving a salary or compensation for his management services, he receives "certain benefits." Pl.'s UF ¶ 13, ECF 174; Defs.' AUF ¶ 3, ECF 177 (citing ECF 177, Ex. B ¶ 3, Ex. C). According to the terms of the Management Agreement, De La Vega is permitted to use any of MCI's assets and is not "obligated or expected to reimburse [MCI] in any way[.]" Pl.'s UF ¶ 14, ECF 174 (citing ECF 116, Ex. 6, at 1–2). In addition, the Management Agreement permits De La Vega to take loans from MCI without interest, penalties, late fees, or any obligation of repayment. Pl.'s UF ¶ 15, ECF 174 (citing ECF 116, Ex. 6, at 2). Although MCI has paid some of De La Vega's expenses[6] [Defs.'s AUF ¶ 30,

---

[5] Plaintiff suggests that statements to this effect are inadmissible hearsay. Pl's Resp. to Defs.' AUF ¶¶ 11–13, ECF 179. Because the statements contained in De La Vega's affidavit, which could be presented in a form that would be admissible in evidence, do not contain out-of-court statements made by De La Vega's attorneys or accountants offered for the truth of the matter asserted, the Court disagrees. *See* Fed. R. Evid. 801.

[6] Defendants assert that "De La Vega has never requested any return of capital he had invested in MCI" and "never received any disbursement for MCI." Defs.' AUF ¶¶ 19–20, ECF 177 (citing ECF 177, Ex. B ¶ 19 (De La Vega avowing, "I have never requested or received any return of capital I have invested in MCI"), ¶ 20 (De La Vega avowing, "I have never received any disbursement for MCI")). Plaintiff disputes both of these statements of fact, insisting that De La Vega *has* taken disbursements from MCI, and did during Plaintiff's state court case." Pl.'s Resp. to Defs.' AUF ¶¶ 19–20, ECF 179 (emphasis added) (citing ECF 179, Ex. 6 (De La Vega's Response to Request for Admission 1: "In a reasonable attempt to answer, Dr. De La Vega admits he has at times received distributions from [MCI], and that at time[s] he also paid personal expenses from part of these distributions."), Ex. 7 (photocopies of checks from MCI to De La Vega)). The Court concludes that a dispute of fact exists as to whether De La Vega took disbursements from MCI and as to whether any such disbursements were for the return of capital he invested in the LLC or for some other purpose.

ECF 177], De La Vega has never received a *salary* for his management of MCI,[7] nor has MCI ever employed any other person to serve as manager.[8] Defs.' AUF ¶¶ 4–5, ECF 177.

De La Vega and MCI share a ledger in QuickBooks, their accounting software.[9] Pl.'s UF ¶ 16, ECF 174. Moreover, neither De La Vega nor MCI make any distinction between De La Vega's use of MCI's vehicles for personal—as opposed to business—use. Pl.'s UF ¶¶ 16, 26, ECF 174. According to De La Vega, when he uses any vehicle, it is recorded as a vehicle expense for MCI on the shared QuickBooks ledger. Pl.'s UF ¶¶ 16, 27, ECF 174. MCI also paid for a 2017 MSCR trailer and its registration, though the trailer is registered to De La Vega. Pl.'s UF ¶ 28 (citing ECF 116, Ex. 23 at 6; ECF 174, Ex. 5, at 90:13–14, 18–23).

MCI owns the home at 6825 Bright View Road in Las Cruces, New Mexico that De La Vega uses as his personal residence without paying rent to MCI. Pl.'s UF ¶ 17–18, ECF 174. Although MCI, not De La Vega, owns the property, De La Vega takes mortgage interest deductions on his individual tax returns. Pl.'s UF ¶ 19, ECF 174. MCI has also paid for repairs on property

---

[7] Plaintiff attempts to dispute Defendants' statement of fact that De La Vega has never received a salary for his management of MCI "because [De La Vega] has taken *distributions* from MCI, and [has] done so during Plaintiff's state court case." Pl.'s Resp. to Defs.' AUF ¶ 4, ECF 179 (citing ECF 179, Ex. 6–7) (emphasis added). Although a factual dispute exists as to whether De La Vega received *distributions* from MCI, Plaintiff does not specifically controvert Defendants' statement of fact concerning receipt of a *salary*.

[8] Defendants assert that MCI "has never employed or paid for any other person *to manage the assets of MCI*[.]" Defs.' AUF ¶ 5, ECF 177. Plaintiff disputes this statement of fact insofar as it suggests no other person was paid to manage MCI assets. Pl.'s Resp. to Defs.'s AUF ¶ 5, ECF 179. In this regard, Plaintiff notes that De La Vega and MCI hired Danika Jackson as a "management assistant." Pl.'s Resp. to Defs.' AUF ¶ 5, ECF 179 (citing ECF 179, Ex. 1).

[9] Defendants assert that MCI has "always and continuously maintained a separate bank account into which revenue of the real estate assets and investments [are] deposited, and from which all real estate company expenses are paid." Defs.' AUF ¶ 16, ECF 177 (citing ECF 177, Ex. B ¶ 16). Plaintiff disputes this statement of fact, pointing to evidence that De La Vega "does not have a separate bank account from MCI" and that MCI and De La Vega share the same QuickBooks accounting ledger. Pl.'s Resp. to Defs.' AUF ¶ 16, ECF 179 (citing ECF 116, Ex. 1, at 29:10–24, 53:20–24). The Court concludes that a genuine dispute of fact exists as to whether MCI maintains a financial ledger and a bank account separate from De La Vega into which it puts revenue from its investments and pays its real estate expenses.

that De La Vega personally owns in Cancun, Mexico, and De La Vega has not reimbursed MCI for those repairs. Pl.'s UF ¶ 31, ECF 174.

On June 8, 2023, De La Vega testified that he does not personally own any real estate. Pl.'s UF ¶ 20, ECF 174. But for years, De La Vega owned a home at 5717 Green Castle Road in El Paso, Texas[10] for which MCI paid the home insurance and property taxes. Pl.'s UF ¶¶ 23, 24, ECF 174. MCI also paid more than $20,000 in attorneys' fees for litigation involving the Green Castle Road property, and there exists no agreement for reimbursement of those fees. Pl.'s UF ¶ 25, ECF 174.

Post-Judgment, De La Vega uses MCI's debit and credit card to pay for groceries [Pl.'s UF ¶ 21, ECF 174], and MCI pays for De La Vega's vehicle, telephone, child and spousal support,[11]

---

[10] Defendants make various assertions concerning the property located at 5717 Green Castle Road, which they assert De La Vega once mistakenly understood to be owned by MCI. Defs.' AUF ¶¶ 22–26, ECF 177. Plaintiff, too, discusses this property in her own statement of facts, asserting that "MCI paid for the insurance for 5717 Green Castle Road," which she describes as "a property [that] was personally owned by [De La Vega], and in which MCI had no interest." Pl.'s UF ¶ 23, ECF 174. In the body of her brief, Plaintiff asserts that De La Vega intentionally provided false testimony that MCI owned the Green Castle Road property in order to avoid its seizure and then reversed course, testifying that the property was his "Texas homestead." ECF 174 at 24–25. In the relevant statements of fact presented by Defendants, they assert, among other things, that De La Vega first learned that the property was not owned by MCI in this lawsuit and that his former understanding that it was owned by MCI was simply an error rather than an intentional misrepresentation. Defs.' AUF ¶¶ 22–26, ECF 177. Plaintiff "contests" these factual assertions on the basis that De La Vega "knew in fact he owned the property personally, as shown in Plaintiff's Reply to her Motion for Partial Summary Judgment, pgs. 3–7." Pl.'s Resp. to Defs.'s AUF ¶ 21, ECF 179. Given these dueling factual assertions, the Court concludes that there is a genuine dispute of fact as to whether De La Vega intentionally misrepresented the ownership of the Green Castle Road property.

[11] Defendants assert that when De La Vega and his former wife, Andrea Reed, divorced, they negotiated a marital settlement agreement that resolved Ms. Reed's community property interests and any claims she might have in MCI. Defs.' AUF ¶ 36, ECF 177. De La Vega avows that, in accordance with that marital settlement agreement, MCI has periodically paid Ms. Reed for spousal support based upon the interest she may have in MCI as a result of New Mexico community property laws. Defs.' AUF ¶¶ 37–38, ECF 177 (citing ECF 177, Ex. B ¶¶ 37–38). Plaintiff does not dispute Defendants' assertions other than to note that MCI *also* pays $5,500 per month to cover De La Vega's child support obligations, which is not a business expense for MCI. Pl.'s Resp. to Defs.' AUF ¶¶ 37–38, ECF 179 (citing ECF 179, Ex. 3, at 81:5–17). Because Defendants do not present any evidence to suggest that MCI paid De La Vega's child support in accordance with its stated business purpose, the Court concludes that a dispute of fact exists as to this point.

life insurance, and some legal and accounting services.[12] Pl.'s UF ¶ 22, ECF 174; Defs.'s AUF ¶ 30, ECF 177.

De La Vega testified that he created Mesilla Capital Investments de Mexico, S. de. R.L. ("MCI Mexico") on or about November 2018, at which time he transferred to the new entity $6,000,000 in personally held real estate. Pl.'s UF ¶ 29–30, ECF 174. In December 2018, De La Vega disbursed to MCI and MCI Mexico $1.2 million in proceeds from the sale of Southwest Health. Pl.'s UF ¶ 62–63, ECF 174; *see also* ECF 171, Ex. 11, at 1. In addition, MCI sent money to MCI Mexico to cover MCI Mexico's expenses, including travel expenses it incurred. Pl.'s UF ¶¶ 67–68, ECF 174. On one occasion, it sent more than $175,000 to MCI Mexico's manager, and on another, it sent $40,000 to cover MCI Mexico's expenses. Pl.'s UF ¶ 67, ECF 174. There exists no loan agreement, no interest, and no time limit for MCI Mexico to repay MCI. Pl.'s UF ¶ 68, ECF 174.

De La Vega insists that he has no personal means to satisfy the Final Judgment against him and no domestic net worth outside of his ownership interest in MCI. Pl.'s UF ¶ 50, ECF 174. He maintains that he has earned no personal income since February 13, 2019, and other than a retirement account containing $5,000 or less, has no personal financial accounts with banks, brokerage firms, or credit unions. Pl.'s UF ¶¶ 42, 46, 48, ECF 174; *see also* ECF 116, Ex. 1, at

---

[12] Defendants assert that MCI paid legal and accounting expenses associated with defending against Plaintiff's state and federal lawsuits because those lawsuits "threatened the ownership and value of [MCI's] real estate assets." Defs.' AUF ¶¶ 31–32, ECF 177 (citing ECF 177, Ex. B ¶¶ 31–32). In his affidavit, De La Vega does not explain how those assets were threatened. *See* ECF 177, Ex. B. For her part, Plaintiff maintains that MCI paid for legal expenses on De La Vega's behalf, which "had nothing to do with MCI." Pl.'s Resp. to Defs.'s AUF ¶ 31, ECF 179 (citing ECF 179, Ex. 3, at 143:17–144:6 (De La Vega testifying that a QuickBooks entry showed a payment made to a law firm in February 2024 for fees related to Texas litigation involving property *De La Vega owned* on Green Castle Road). Plaintiff further asserts that MCI paid for De La Vega's legal and accounting fees before Plaintiff moved to pierce MCI's corporate veil—that is, before there was any threat to the ownership or value of MCI's assets. Pl.'s Resp. to Defs.'s AUF ¶¶ 31–32, ECF 179 (citing ECF 179, Ex. 4 (November 3, 2020 Motion to Pierce the Corporate Veil), Ex. 5 (MCI bank statement showing expenditures for legal fees in January, February, May, August, and October of 2020). The Court concludes that a genuine dispute of fact exists as to whether MCI paid for legal fees and accounting services that were unrelated to MCI and its assets.

29:10–24. According to De La Vega, he did not take out any loans between February 14, 2020 and January 19, 2023, nor did he have any personal expenses for housing, food, travel, utilities, entertainment, cell phone, vehicles, clothing or jewelry during that time. Pl.'s UF ¶ 44, 47, ECF 174.

In August 2020, De La Vega reported that his only valuable assets included a financed truck, a financed boat, and his interest in MCI. Pl.'s UF ¶ 34, ECF 174. He estimated that the boat would net $5,000 if sold and later explained that the truck had been sold. Pl.'s UF ¶¶ 35, 49, ECF 174.  In June 2023, De La Vega testified that he had less than $5,000 in personal assets. Pl.'s UF ¶ 40, ECF 174. He reported that he drives a 19-year-old Toyota Prius, worth approximately $800, and MCI pays for its fuel, repairs, tires, and batteries. Pl.'s UF ¶¶ 35–36, ECF 174.

De La Vega used MCI funds to start a new medical practice, Kidney Wellness Center ("KWC"), where he works approximately two days per week without earning any wages. Pl.'s UF ¶¶ 52, 58, 59, ECF 174. De La Vega signed the loan document that funded KWC on behalf of both MCI and KWC, and no negotiations occurred between the two entities during the transaction. Pl.'s UF ¶ 53, ECF 174. Given that lending is not a purpose of MCI and did not benefit MCI, De La Vega testified that the money was lent to KWC "as a favor." Pl.'s UF ¶ 54, 56, ECF 174. Testifying as MCI's Rule 30(b)(6) witness, De La Vega explained that the money lent by MCI to KWC need not accrue interest "because it is not an actual loan." Pl.'s UF ¶ 55, ECF 174. According to De La Vega, KWC is not profitable, nor does he expect it to become so. Pl.'s UF ¶ 57, ECF 174.

As for De La Vega's former medical practice, Southwest Health filed for Chapter 7 Bankruptcy on August 29, 2024, with MCI paying for its bankruptcy proceedings but receiving no benefit in return. Pl.'s UF ¶ 64–66, ECF 174.

## II.  SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the moving party initially bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the nonmoving party must show that genuine issues remain for trial. *Id.* The nonmoving party must go beyond the pleadings and must designate specific facts derived from admissible evidence (affidavits, depositions, answers to interrogatories, or admissions) demonstrating a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995). Only disputes of fact that might affect the outcome of the case will properly preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a finder of fact to return a verdict for that party. *See id*. at 248.

In analyzing cross-motions for summary judgment, a court "must view each motion separately, in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." *United States v. Supreme Court of New Mexico*, 839 F.3d 888, 906–07 (10th Cir. 2016). "Cross motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007). When considering cross-motions for summary judgment, a court may assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is inappropriate if material factual disputes nevertheless exist. *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

## III. ANALYSIS

### A. Plaintiff's Motion for Partial Summary Judgment (Count I)

At the outset, the Court takes up a procedural issue raised by Defendants in their response brief. They assert that Plaintiff's Motion for Partial Summary Judgment fails to comply with Local Rule 56.1(b).[13] *See* ECF 177 at 1. Pursuant to that rule, a movant must "set out a concise statement of all the material facts as to which the movant contends no genuine issue exists[,]" numbering the facts and "refer[ring] with particularity to those portions of the record upon which the movant relies." D.N.M.LR-Civ. 56.1(b). The same rule requires that the non-movant, in turn, set out a "concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist[,] numbering the facts in dispute and "refer[ring] with particularity to those portions of the record upon which the non-movant relies." *Id*.

Defendants accuse Plaintiff of violating Local Rule 56.1 by "fail[ing] to enumerate a statement of factual allegations with citations to the record." ECF 177 at 5. Given this purported failure, Defendants suggest that they can offer only a blanket denial of "all factual allegations located throughout Plaintiff's motion[.]" *Id*. But curiously, Plaintiff *did* set out a statement of material facts—indeed, sixty-eight such facts over thirteen pages—as to which she contends no genuine issue exists. *See* ECF 174 at 1–13. Even more curious, it is *Defendants* who fail to comply with the very Local Rule they accuse Plaintiff of violating. *See* ECF 177 at 5. That is, Defendants do not favor the Court with their own "concise statement of the material facts cited by [Plaintiff] to which [Defendants] contend[] a genuine issue does exist." *See* D.N.M.LR-Civ. 56.1(b). Apart from their blanket denial of "all factual allegations" in Plaintiff's Motion, Defendants' only effort

---

[13] More precisely, Defendants argue that "Plaintiff's two summary judgment motions should be summarily denied because these motions fail to comport with requirements of Fed. R. Civ. P. 56 and D.N.M.LR-Civ. 56.1(b) . . . [and] have no enumerated statement of uncontroverted material facts." ECF 177 at 1. The Court addresses Defendants' procedural arguments as to Plaintiff's other summary judgment motion below.

to comply with Local Rule 56(b) was to set out their own *additional* facts that they contend preclude summary judgment. *See* ECF 177 at 5–11; D.N.M.LR-Civ. 56.1(b) (permitting a response to "set forth additional facts other than those which respond to [the movant's statement of material facts] which the non-movant contends are material to the resolution of the motion.").

Because Defendants failed to fully comply with Local Rule 56.1, Plaintiff urges the Court to deem admitted each of her sixty-eight material facts. ECF 179 at 4. She contends that Rule 56.1(b) itself counsels such a remedy: "All material facts set forth in" Plaintiff's statement of material facts "will be deemed undisputed unless specifically controverted." ECF 179 at 4 (quoting D.N.M.LR-Civ. 56.1(b)).

While the Court does not condone Defendants' non-adherence to a Local Rule designed to promote the orderly analysis of evidence presented on summary judgment,[14] the Court declines to deem admitted each of Plaintiff's material facts on this basis, where Defendants set out thirty-eight additional material facts with citations to the record, some of which controvert Plaintiff's statement of material facts. In other words, Defendants made some effort to controvert Plaintiff's factual allegations, even if not in the precise manner contemplated by the Local Rule. Even so, to the extent a material fact alleged by Plaintiff is not controverted by Defendants' *additional* material facts, the Court treats that fact as undisputed.

### i. Viability of Plaintiff's Outside Reverse Veil Piercing Theory

Plaintiff's Motion for Partial Summary Judgment and Defendants' Response thereto both address a legal issue the Court identified over a year ago: whether outside *reverse* veil piercing[15]

---

[14] In the future, Defendants and their counsel should fully comply with the dictates of Local Rule 56.1, lest they risk an unfavorable summary judgment ruling by operation of that rule.

[15] In the underlying state court action, the New Mexico Court of Appeals defined "outside reverse veil piercing" as "disregard[ing] the separate existence of a corporation and [allowing a claimant to] obtain the assets of that entity due to the actions of the dominant shareholder or other corporate insider." *Imming v. De La Vega*, 535 P.3d 693, 695 (N.M. Ct. App. 2023) (quoting *In re Phillips*, 139 P.3d 639, 641 (Colo. 2006)).

is a viable claim in New Mexico. *See* ECF 174 at 13; ECF 177 at 11–15; *see also* ECF 25 at 25 (Dec. 14, 2023 Memorandum Opinion and Order explaining that "a related issue will likely require additional consideration and briefing as this case progresses—that is whether New Mexico recognizes the theory of outside *reverse* piercing the corporate veil").

In cases arising under diversity jurisdiction, such as this one, "the *Erie* doctrine instructs that federal courts must apply state substantive law and federal procedural law." *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162–63 (10th Cir. 2017). And when, as in this case, "no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do." *Wade v. EMASCO Ins. Co*., 483 F.3d 657, 666 (10th Cir. 2007) (citation omitted). Thus, the Court finds itself in the position of needing to predict whether the New Mexico Supreme Court would adopt as a valid legal theory outside reverse piercing veil when such a theory is deployed (a) by a tort judgment creditor, (b) against a defendant in his personal capacity, (c) whose personal assets may be insufficient to pay the judgment, but (d) is the sole shareholder and sole member of his co-defendant LLCs, (e) that have sufficient assets.

Plaintiff insists that a proper *Erie* analysis leads to the conclusion that the New Mexico Supreme Court *would* recognize outside reverse veil piercing. ECF 174 at 13–15. Indeed, she suggests that sixty-six years ago, in *Addison v. Tessier*, 335 P.2d 554 (N.M. 1959), the court *permitted* outside reverse veil piercing, albeit without naming it as such. *Id*. at 13–14. Plaintiff further argues that *disallowing* outside reverse veil piercing would go against a "growing majority of courts across the country [that] have adopted it as a potential equitable remedy" as well as encourage judgment-debtors in New Mexico to "engage in shell-games to avoid legal consequences of their actions." *Id*. at 14–15 (citations omitted). Finally, Plaintiff asserts that

refusing to permit outside reverse veil piercing would violate the Fourteenth Amendment's Equal Protection Clause by "create[ing] two classes of citizens: (1) those . . . immune from collection efforts because they have significant assets so they may earn no wages and conceal their assets in their LLCs; and (2) those subject to collection efforts because they do not have such resources." *Id*. at 15.

Defendants respond that "piercing the veil" is not a distinct cause of action and, further, that "no New Mexico law remotely supports Plaintiff's argument for *reverse* 'piercing.'" ECF 177 at 11 (emphasis added). As Defendants describe them, the New Mexico cases that address veil piercing involve judgments entered against an entity where the court has permitted, as an equitable remedy, the judgment creditor to pierce the corporate veil to collect *from an individual owner or shareholder* of that entity, not from the entity itself. *Id*. at 13 (citations omitted).

The Court has already resolved Defendants' first argument (i.e., that "piercing the veil" is not a distinct cause of action on which Plaintiff can proceed) in Plaintiff's favor. Drawing on two decisions from the New Mexico Court of Appeals—its authorization of relief, in *Estate of Bishop v. Mulholland*, based upon a standalone cause of action for piercing the corporate veil and its suggestion in the underlying state court action that Plaintiff could bring an independent action to recover from MCI—this Court concluded that veil piercing is a claim on which relief can be granted. *See* ECF 25 at 24–25 (Dec. 14, 2023 Memorandum Opinion and Order denying Defendants' Motion to Dismiss) (citing *Estate of Bishop*, No. 30,016, 2011 WL 5397134 (N.M. Ct. App. Sept. 15, 2011); ECF 15-1 at 8). The Court will not, in the context of Plaintiff's Motion for Partial Summary Judgment, reconsider its ruling to this effect.

Defendants' second argument deserves much more consideration. Plaintiff concedes that New Mexico courts have not yet *expressly* applied outside reverse veil piercing,[16] though she offers some persuasive reasons why the New Mexico Supreme Court may ultimately be inclined to do so. ECF 174 at 13–15. Nevertheless, in lieu of offering its *Erie* guess on this as-yet-unresolved legal issue in the summary judgment context, the Court concludes that the better course is to reserve ruling until it issues Findings of Fact and Conclusions of Law following the bench trial. It does so in part because, as discussed below, genuine disputes of fact exist that preclude summary judgment in any event. Doing so will also allow the Court to more carefully examine the critical and novel legal issue before it and to decide it in tandem with the factual issues in this case. In the event of appeal, any reviewing court will have the benefit of considering the legal and factual issues altogether, rather than in piecemeal fashion.

### ii. Elements of Corporate Veil Piercing

Plaintiff argues that she has set forth sufficient undisputed material facts to prevail on the veil piercing claim she asserts against MCI in Count I of her Second Amended Complaint. ECF 179 at 5–7. In contrast, Defendants contend that even if the Court entertains Plaintiff's "novel thought" of reverse veil piercing, Plaintiff has "no evidence" to support such a claim. ECF 177 at 16. While the parties disagree over the availability of Plaintiff's piercing claim and over the sufficiency of her showing on that claim, they agree on the elements that would be applicable to a putative reverse veil piercing claim: (1) dominion and control; (2) use of the entity for an improper purpose; and (3) proximate causation of harm to Plaintiff. *See* ECF 174 at 16 (citing *Morrissey v.*

---

[16] In its June 12, 2023 decision in the underlying state court case, the New Mexico Court of Appeals, too, observed that "New Mexico courts have not squarely addressed whether reverse veil piercing is permitted under New Mexico law and under what circumstances." *Imming*, 535 P.3d at 695 (citing Lara Spitz, *The Case for Outside Reverse Veil Piercing in New Mexico*, 51 N.M. L. Rev. 349, 352 (2021)).

*Krystopowicz*, 365 P.3d 20, 23–24 (N.M. Ct. App. 2016); ECF 177 at 15 (citing *Harlow v. Fibron Corp.*, 671 P.2d 40, 43 (N.M. Ct. App. 1983)).

### a. *Dominion/Control and Improper Purpose*

There is considerable overlap between the first and second elements of Plaintiff's veil piercing claim. As to the first element, Plaintiff insists that she has demonstrated De La Vega's dominion and control by presenting facts that show: De La Vega is MCI's only manager, owner, and decisionmaker; he is able to use MCI's assets without obligation or repayment; he can take loans from MCI without interest or repayment; MCI and De La Vega have commingled their funds by sharing an accounting ledger and by MCI paying many of De La Vega's personal expenses and funding his personal ventures, including a new medical practice, without distinguishing between personal or business use of MCI assets and without regard for MCI's stated business purpose. ECF 174 at 16–22; ECF 179 at 5–6.

As to the second element, Plaintiff contends that she has demonstrated that De La Vega uses MCI for improper purposes by presenting facts that show: De La Vega used MCI to make himself judgment proof (*i.e.*, that he had more than $29 million in personal assets during the underlying state court case but now professes to have no income and no domestic net worth outside of MCI); De La Vega has no personal expenses, including housing, food, travel, utilities, cell phone, vehicle or clothing; and MCI pays for De La Vega's personal expenses, including his rent, his litigation costs, his spousal and child support, and his groceries; De La Vega has made misrepresentations as to MCI's ownership and its assets, including with regard to the Green Castle Road residence; and De La Vega has committed fraud through presenting false testimony and with respect to MCI's corporate taxes. ECF 174 at 22–26; ECF 179 at 6–7.

For their part, Defendants insist that Plaintiff cannot satisfy the first two elements, because she fails to come forward with evidence that MCI[17] was "set up" for a fraudulent purpose *or* that it was undercapitalized. ECF 177 at 15–16. Relatedly, Defendants maintain that MCI was "created from inception, and [has] always existed legitimately to acquire, own and manage real estate assets." *Id*. at 19. According to Defendants, the evidence shows that De La Vega has not "demanded a salary or compensation" from MCI and, further, the Management Agreement does not provide for this form of compensation but instead "authorizes him to exercise certain benefits in lieu of any other management fee." *Id*. at 17–18. Defendants suggest that a vehicle, cell phone, and residence are among those benefits conferred on De La Vega, and they characterize them as "not at all uncommon benefits of business ownership." *Id*. at 18. As to the payment of legal fees, Defendants contends that these payments were made, not to cover De La Vega's personal expenses, but "to protect and defend the very property assets of [the real estate companies] Plaintiff would execute upon." *Id*. at 19. Similarly, Defendants insist that MCI's payments to De La Vega's former spouse were made as "a 'buy-out' and amicable settlement of a potential interest" in MCI. *Id*.

### b. *Proximate Cause*

With respect to the final element of her piercing claim, Plaintiff argues that she has presented undisputed evidence showing that De La Vega and MCI engaged in a cooperative effort that unjustly injured her. ECF 174 at 27–29. She points to the Management Agreement between De La Vega and MCI under which she insists they knowingly cooperated to defeat the state court judgment in her favor. *Id*. As Plaintiff sees it, if De La Vega had retained the $29 million in

---

[17] Although Defendants refer both to MCI and MCI-Mexico, or "the MCI entities," throughout their briefing, the Court disregards arguments to the extent they relate to Plaintiff's claims against MCI Mexico, both because Plaintiff moved for summary judgment only as to MCI [*see* ECF 174] and because a default judgment has been entered against MCI Mexico [ECF 155].

personal assets he reported having before entry of the state court judgment, the judgment would have been satisfied. *Id.* at 28.

Defendants, on the other hand, assert that "Plaintiff has no evidence of proximate cause between any alleged impropriety in the corporate form and Plaintiff's allegations of workplace injury, or inability to collect against Dr. De La Vega individually." ECF 177 at 16. As to the former, Defendants emphasize that Plaintiff has not presented facts to "make a causal connection between her allegations of corporate mismanagement . . . and her claim to damages for employment experience." *Id.* at 20. As to the latter, Defendants contend that Plaintiff has not pointed to any evidence to suggest that (1) MCI "is required to pay Dr. De La Vega a salary, or otherwise compensate him personally, from which she could collect on her Judgment"; or (2) De La Vega "transferred real property assets from his individual ownership to MCI" at any time relevant to Plaintiff's claims here. *Id.* at 22. Insofar as Plaintiff suggests that De La Vega improperly disbursed to MCI proceeds from the sale of Southwest Health, Defendants contend that the "undisputed material facts" show that "the negotiated sale of [Southwest Health] was in place long before Plaintiff's Judgment." *Id.* at 23.

### iii.  Genuine Disputes of Material Fact

Pursuant to Federal Rule of Civil Procedure 56, the Court cannot grant summary judgment on Plaintiff's veil piercing claim against MCI unless the admissible evidence, when viewed in the light most favorable to Defendants, leaves no genuine issues of material fact as to any of the claim's essential elements. *See* Fed. R. Civ. P. 56. Construing the evidence and indulging all reasonable inferences in the light most favorable to Defendants, the Court discerns genuine disputes of fact on *at least* the following issues, which are material to Plaintiff's piercing claim:

1.  Whether MCI, at times relevant to Plaintiff's claims, operated legitimately to acquire, own, and manage real estate assets in the United States.

2. Whether De La Vega intentionally misrepresented that MCI owned property located at 5717 Green Castle Road, El Paso Texas, knowing that he personally owned that property and in order to avoid seizure of that property.

3. Whether De La Vega, at times relevant to Plaintiff's claims, took disbursements from MCI and, if so, whether any such disbursements constituted a return of capital that De La Vega invested in MCI.

4. Whether the legal fees MCI paid on De La Vega's behalf were related to MCI's purpose or its assets.

5. Whether the accounting fees MCI paid on De La Vega's behalf were related to MCI's purpose or its assets.

6. Whether MCI satisfied or continues to satisfy on De La Vega's behalf spousal and/or child support obligations that are related to MCI's purpose and to its benefit.

7. Whether MCI maintains a financial ledger and account separate from De La Vega into which it puts revenue from its investments and pays its real estate expenses.

Because these material factual disputes remain, Plaintiff's Motion for Partial Summary Judgment is not well-taken and will be denied.[18]

### B. Defendants' Motion for Partial Summary Judgment

The Court begins its summary judgment analysis of Defendants' Motion with a procedural matter. Plaintiff notes that Defendants failed to comply with Local Rule 7.1(a), which requires a movant to determine whether a motion is opposed and provides that "a motion that omits recitation of a good-faith request for concurrence may be summarily denied." D.N.M.LR-Civ. 7.1(a). In its Memorandum Opinion and Order addressing Defendants' Motion to Dismiss, the Court previously warned Defendants that a violation of Rule 7.1(a) "risks the requested relief being summarily denied." ECF 25 at 8. And yet, once again, Defendants' Motion for Partial Summary Judgment includes no recitation of a good-faith request for concurrence. *See* ECF 175. After Plaintiff noted the omission, defense counsel replies that he mistakenly followed the state procedure, which dispenses with the requirement to confer for a summary judgment motion. ECF 192 at 13.

---

[18] The Court acknowledges that Defendants also raise a statute of limitations issue in their Response to Plaintiff's Motion for Partial Summary Judgment. Because Defendants make this same argument, almost verbatim, in their own Motion for Partial Summary Judgment, to which Plaintiff responds and Defendants reply, the Court will resolve the issue in that more-fully-developed context.

Although the Court will not take the harsh step of summarily denying Defendants' Motion, it issues a second warning to Defendants and their counsel to heed Local Rule 7.1(a), even with respect to dispositive motions.

### i. Statute of Limitations

Defendants contend that the applicable statute of limitations bars Plaintiff's piercing claim against MCI and De La Vega (Count I), her New Mexico Voidable Transfers Act ("NMVTA") claim against MCI Mexico and De La Vega (Count III), and her declaratory and injunctive relief claims against MCI and De La Vega (Count V). *See* ECF 192 at 10 (arguing that the statute of limitation operates to bar "Courts 1, 3, and 5"); *see also* ECF 175 at 21–22 (same). The Court previously held that Plaintiff's veil piercing claim was *not* barred by any applicable statute of limitations, though it reached that conclusion at the motion to dismiss stage and with respect to a previous iteration of Plaintiff's complaint. ECF 25 at 13. At the time of the Court's previous ruling, Defendants suggested that New Mexico's three-year catchall limitation period applied to Plaintiff's veil piercing claim, but the Court "question[ed] whether a longer, four-year limitation period may be more suited to the claim." *Id.* (citing NMSA 1978 § 37-1-4). Regardless, the Court held that Plaintiff's veil piercing claim was not barred even applying a shorter three-year limitation period. *Id.* The Court rejected the trigger dates proposed by Defendants—the last date of Plaintiff's employment with Southwest Health (*i.e.*, July 2016) and the date of the state court judgment (*i.e.*, February 2020)—because both dates effectively disregarded Plaintiff's claim that De La Vega transferred assets to MCI after the state court judgment to avoid paying it. *Id.* at 14 (citing ECF 10 ¶ 87 ("Post-Judgment, Defendant DLV transferred all of his valuable personal assets to his alter-ego, Defendant MCI.")). The Court reasoned that the "most logical triggering date" was Plaintiff's alleged post-judgment discovery that De La Vega transferred his assets to MCI, which Plaintiff

indicated was around the time she filed her motion to pierce the corporate veil in state court. *See id.* (citing NMSA 1978 § 37-1-7).

Defendants now concede that the longer, four-year limitation period in NMSA § 37-1-4 is the "best match" for Plaintiff's piercing and "alter-ego" claims. *See* ECF 175 at 22. They suggest, however, that the Court should now reach a different decision as to timeliness, given the distinct summary judgment standard, whereby the Court no longer need accept as true the allegations in Plaintiff's complaint and there are "different . . . evidentiary burdens." ECF 192 at 6.

Plaintiff urges the Court to reject Defendants' renewed statute of limitation argument for three reasons: (1) "the New Mexico Court of Appeals found a procedural vehicle 'is' available to Plaintiff," (2) "this Court previous[ly] rul[ed] Plaintiff claims were <u>not</u> time barred," and (3) "Defendants do not state a specific date they claim the statute of limitations began and therefore their argument fails for lack of specificity." ECF 178 at 5. At the same time, Plaintiff offers two new potential trigger dates for the Court's consideration: her June 8, 2023 discovery of De La Vega's transfer of money from the $1.2 million sale of Southwest Health to MCI and MCI Mexico and, alternatively, De La Vega's April 25, 2024 testimony that he transferred more than $6,000,000 in personally held real estate to MCI Mexico. *Id.* at 24 (citing ECF 116, Ex. 1, at 166:2–20; ECF 171, Ex. 5, at 48:2–25). Both of these events came after Plaintiff filed her initial complaint asserting that MCI was De La Vega's alter ego, and well after Plaintiff moved to pierce the veil in the state court action. *See* ECF 5, Ex. A, at 1 (observing that Plaintiff's motion to pierce the veil was filed November 3, 2020).

Notably, Plaintiff's factual allegations against MCI have shifted somewhat in her Second Amended Complaint.[19] No longer does Plaintiff directly allege, as she did in her First Amended

---

[19] Although Plaintiff has twice amended her complaint, Defendants do not argue that Plaintiff's claims do not relate back to the date of her original pleading under Federal Rule of Civil Procedure 15(c). Instead, they suggest that

Complaint, that De La Vega transferred all of his valuable assets to MCI post-judgment. *Compare* ECF 10 ¶ 87, *with* ECF 116 at 25–31. Instead, she asserts that De La Vega "hid assets in Defendant MCI in order to make himself judgment proof." ECF 116 ¶ 194. Under the undisputed facts and based on Plaintiff's claims as presented in her Second Amended Complaint, the "most logical triggering date" for the statute of limitations is Plaintiff's alleged post-judgment discovery that De La Vega had no significant financial existence outside of MCI. Given De La Vega's stipulation during the underlying state court trial that he had more than $20 million in personally held assets [*see* ECF 116, Ex. 2 (June 12, 2019 stipulation)], the Court can infer that this relevant discovery came *after* that stipulation.

Defendants argue that the limitation period for the relevant counts ran from the end of Plaintiff's employment with Southwest Health in July 2016. ECF 192 at 4. In support, they point to undisputed evidence showing Plaintiff was aware of MCI, having herself performed work for the company while employed by Southwest Health between 2015 and 2016. *Id*. at 2–3. As Defendants put it, "Plaintiff cannot claim Dr. De La Vega concealed the existence of MCI LLC, when she also testified she performed substantial work managing tasks and leases for MCI LLC." *Id*. at 8. Relatedly, Defendants contend that "[a]ny business practices which Plaintiff now contends should justify disregarding MCI . . . as an entity were ongoing during her employment, and also during the state court litigation." *Id*. at 3.

But the Court is not persuaded that Plaintiff's previous awareness of MCI or of some connection between De La Vega and MCI alters its timeliness analysis, nor does the ongoing nature of the "business practices" about which Plaintiff complains. After all, the undisputed evidence

---

Plaintiff failed to join MCI in her state court lawsuit and then made a "belated attempt" to assert claims against MCI on May 3, 2023, when she filed her initial complaint in this case. *See* ECF 175 at 21–22 (observing that Plaintiff filed her state court lawsuit on February 13, 2017, but did not bring suit against MCI until May 3, 2023).

before the Court does *not* suggest that Plaintiff was aware during her employment with Southwest Health, or even during the state court litigation, that De La Vega had no significant financial existence outside of MCI. Indeed, such an understanding would be contrary to De La Vega's own representation only a few months before the state court entered judgment against him.

Defendants further argues that Plaintiff should have anticipated how she might collect on any state court judgment in her favor. *Id*. Indeed, they contend that it was Plaintiff's "duty to have become aware of th[e] relationship [between De La Vega and MCI] if she intended to collect against the assets of MCI LLC as she does now." *Id.* at 8. The Court might have been persuaded by this line of argument were it not for the undisputed evidence that De La Vega identified more than $20 million in *personally held* assets during the state court litigation.  In light of that evidence, and given that Defendants have not identified a limitation-period-triggering date the Court considers more appropriate than the date Plaintiff filed her motion to pierce the veil in state court, the Court will not reconsider its previous determination that Plaintiff's piercing claim against MCI, now Count I of her Second Amended Complaint, is not time-barred.

Notably, Defendants do not argue that the Court should analyze the timeliness of Count V (*i.e.*, for declaratory and injunctive relief against MCI) differently or that a different statute of limitations applies. *See* ECF 175; ECF 192. Like Count I, Count V is premised on De La Vega's alleged control and dominion over MCI and the use of MCI for an improper purpose. S*ee* ECF 116 ¶ 330. Insofar as Defendants contend that Count V is barred by the applicable statute of limitation, their Motion is denied for the same reasons it is denied with respect to Count I.

Although Defendants assert that Count III is "time barred as a matter of law" [ECF 192 at 10], it appears they may have misunderstood that cause of action and against which defendant it was asserted. Count III relates to MCI Mexico rather than MCI. S*ee* ECF 116 at 38–39. Observing

22

that default has been entered against MCI Mexico, Plaintiff insists that MCI-Mexico, and by extension Count III, are "<u>not</u> part of Defendants' Motion." ECF 178 at 25. Defendants do not respond and, instead, address only the timeliness of Plaintiff's claims *against MCI*. *See, e.g.*, ECF 192 at 10 (asserting that "[s]ummary judgment must be granted on [the basis of untimeliness], and Count[ III] dismissed as to *MCI LLC*." (emphasis added)). Because MCI Mexico, as a defaulted party, asserts no argument that Plaintiff's claims against it are time-barred, Defendants' Motion is denied in that respect.

In sum, the Court denies Defendants' Motion to the extent it seeks summary judgment on Counts I, III, and V by operation of the applicable statute of limitations.

### ii.  Count I – Piercing Claim Against MCI and De La Vega

Defendants contend that "Plaintiff's attempt to collect a judgment—entered against Dr. De La Vega individually—by executing on assets of [MCI] fails to state a recognized cause of action for 'piercing' or 'alter ego.'" ECF 175 at 6. Defendants offer three reasons why they believe Plaintiff's piercing claim against MCI fails as a matter of law. *Id.* at 6–17. They turn first to the outstanding issue of New Mexico's recognition of outside reverse veil piercing. *Id.* As explained above, resolution of that issue is reserved until the Court issues its Findings of Fact and Conclusions of Law after the bench trial. Relatedly, Defendants argue, as they did in response to Plaintiff's Motion for Partial Summary Judgment, that "[t]here is no New Mexico law supporting Plaintiff's notion that 'piercing the veil' is a distinct cause of action." *Id.* at 8. As noted above, the Court determined at the motion to dismiss stage that veil piercing is a cause of action on which relief can be granted, and Defendants do not offer any compelling reason to revisit that holding. *See* ECF 25 at 24–25; ECF 175 at 6–8.

Continuing the trend of raising previously-decided legal issues, Defendants next argue that the New Mexico Limited Liability Act "expressly preclude[s]" a "reverse pierce" of MCI. ECF 175 at 14–17. This argument, too, was already resolved by this Court. *See* ECF 25 at 18 ("Guided by the Court of Appeals' analysis in *Morrissey* and the absence of any statutory language or case law identifying the Limited Liability Act as the exclusive source of relief for the judgment creditor of an LLC member, the Court is satisfied that the Act does not stand in the way of Plaintiff's attempt to assert a claim for veil piercing in this case.") And again, Defendants offer no compelling reason for the Court to reconsider its previous holding. *See* ECF 175 at 14–17.

A fourth legal issue underpins much of Defendants' argument in support of summary judgment on Count I. That is, Defendants suggest that veil piercing is only permitted under New Mexico law if a business entity was "set up" for improper or "sham" purposes. *See* ECF 175 at 8–10 (citing *Scott v. AZL Res. Inc.*, 753 P.2d 897 (N.M. 1988)). Operating under that premise, they contend that they are entitled to summary judgment because Plaintiff has no evidence that MCI[20] was "set up for fraudulent or sham purposes at all—much less in relation to Plaintiff's employment." *Id.* at 10. To that end, Defendants emphasize that MCI was created in 2004, over eleven years before Plaintiff was employed by Southwest Health or De La Vega. *Id.* Correspondingly, Defendants insist that Plaintiff cannot refute De La Vega's testimony that MCI was set up to acquire, own, and manage real estate investment properties in the United States. *Id.*

But Plaintiff takes issue with Defendants' characterization of New Mexico veil piercing law, insisting that "mismanagement" *after creation* of a business entity is an equally valid way to demonstrate improper purpose. ECF 178 at 14. Plaintiff relies principally upon *Estate of Bishop.*

---

[20] Defendants make these and other arguments with respect to both MCI *and MCI Mexico*; however, as explained throughout, claims against MCI Mexico are not at issue on summary judgment, as MCI Mexico has defaulted. As such, the Court restricts its analysis to Plaintiff's claims against MCI.

*See id.* at 14–15. There, the New Mexico Court of Appeals was quite clear: "[T]o pierce the corporate veil, New Mexico law does not require that a corporation be *set up* for a fraudulent purpose . . . . [M]ismanagement at any subsequent time may be used to establish evidence of an improper purpose." *Estate of Bishop*, 2011 WL 5397134, at *4 (emphasis added). In light of the court's unequivocal rationale in *Estate of Bishop*, the Court agrees with Plaintiff that she need not come forward with evidence that MCI was *created* for an improper purpose, only that it was mismanaged in such a way as to establish improper purpose.

In reply, Defendants contend that Plaintiff has failed to demonstrate that the "fraudulent management" of MCI thwarted her ability to obtain satisfaction of the state court judgment. ECF 192 at 4. For instance, they argue that there is no evidence of real property transferred from De La Vega's personal ownership to MCI.[21] Defs.' UF ¶ 4; ECF 192 at 4. Without citing any evidence or authority in support, Defendants suggest that the "benefits" De La Vega has historically enjoyed by virtue of the Management Agreement between himself and MCI do not demonstrate improper purpose but are merely "benefits . . . commonly received by business managers." ECF 175 at 13; *see also* ECF 192 at 4–5.

---

[21] Defendants explain that, in an attempt to refute Plaintiff's "longstanding and baseless allegation that Dr. De La Vega transferred millions of dollars in personally owned real estate to MCI LLC," they retained a title examiner to verify that there has been no recorded transfer of real property from De La Vega to MCI. ECF 192 at 13. Defendants append to their Motion the affidavit of Adrienne Loera, a licensed title agent, who avows that she was retained by Defense counsel to prepare a title report after searching for transfers of title to real property by or between MCI, De La Vega, and Southwest Health. ECF 175, Ex. E. Ms. Loera avows that her title search "located no documented transfer of property ownership by any of the three parties." *Id*. Plaintiff argues, first, that Defendants failed to disclose in their initial disclosures or in discovery, after repeated requests, the title documents that are the subject of Ms. Loera's affidavit. ECF 178 at 18. Second, Plaintiff observes that Ms. Loera only researched transfers of title in Doña Ana County. *Id*. at 19. Third, Plaintiff contends that Ms. Leora's affidavit violates Federal Rule of Evidence 1002, the so-called "Best Evidence Rule," because she testifies as to the content of documents she does not provide. *Id*. For all of these reasons, Plaintiff contends that Defendants should be precluded from relying on such evidence on summary judgment. *Id*. In the Court's assessment, even if it were to consider the affidavit of Ms. Loera, for which there is no corresponding material fact in Defendants' statement of facts, Defendants would still not be entitled to summary judgment on Plaintiff's veil piercing claim, given the genuine disputes of material fact that the Court identifies herein. Notably, the Court will have the opportunity to consider the admissibility of the evidence in question by evaluating the more developed arguments in Plaintiff's Motion in Limine No. 2 and Defendants' response thereto. *See* ECF 222.

Construing the evidence and indulging all reasonable inferences in the light most favorable to Plaintiff, the Court concludes that Plaintiff has presented genuine disputes of fact on *at least* the following issues that are material to her piercing claim against MCI:

1. Whether De La Vega has mismanaged MCI in such a way as to demonstrate improper purpose.
2. Whether MCI has been, at times relevant to Plaintiff's claims, operated legitimately to acquire, own, and manage real estate assets in the United States.

Because these factual disputes remain and because the Court elects to reserve ruling on the legal issue of whether the New Mexico Supreme Court would recognize outside reverse veil piercing, Defendants' Motion is not well-taken and will be denied with respect to Count I.

### iii. Count III – NMVTA Claim Against MCI Mexico and De La Vega

Defendants argue that Count III must fail "because there has been no transfer of property from Dr. De La Vega to MCI LLC," and as such, there "can be no unlawfully voidable transfer of property to rescind or void." ECF 175 at 21. They contend that Plaintiff is without any evidence to demonstrate a genuine issue of material fact with respect to an unlawful transfer of assets completed with intent to hinder, delay, or default Plaintiff. *Id.*

In response, Plaintiff insists that dismissal of Count III is not warranted for two reasons: (1) because "MCI-Mexico failed to appear, and had an Entry of Default entered against it," and (2) because De La Vega testified that "he transferred millions of dollars to MCI-Mexico while Plaintiff's state court case was pending." ECF 178 at 4 (citing ECF 132 (Default Judgment); ECF 171, Ex. 5, at 47:16–49:14).

Critically, Defendants appear to have fundamentally misapprehended Count III, which is asserted against *MCI Mexico*, not MCI. *See* ECF 116 at 38–39. The Court agrees with Plaintiff that summary judgment is not warranted on Count III, both because MCI Mexico is defaulted [*see* ECF 155] and because the undisputed facts before the Court indicate that De La Vega transferred

$6,000,000 in personally held real estate to MCI Mexico at the time of MCI Mexico's November 2018 creation [Pl.'s UF ¶ 29–30, ECF 174].

### iv. Count IV – NMVTA Claim Against Southwest Health and De La Vega

With respect to Count IV, both sides advise the Court that a bankruptcy stay is in place as to Southwest Health. Defendants suggest that an automatic bankruptcy stay "precludes continuing claims against [Southwest Health]" [ECF 175 at 20], and Plaintiff responds that "Count IV should be determined by the Bankruptcy Court in an adversary proceeding, not by this Court" [ECF 178 at 5]. *See also* ECF 192 n.1. But shortly after completion of briefing on Defendants' Motion, Plaintiff filed a Notice alerting the Court that the U.S. Bankruptcy Court for the District of New Mexico had issued a Final Decree and closed Southwest Health's bankruptcy case on November 13, 2024. ECF at 193. Plaintiff explains that because Southwest Health's bankruptcy case was closed, no assets were distributed, and no debts discharged, Count IV of her Complaint should now "continue unabated." *Id.* at 1.

Although the bankruptcy stay was in place when they filed their briefs, both sides went on to address the merits of Plaintiff's NMVTA claim against Southwest Health and De La Vega. Defendants argue that undisputed material facts demonstrate that the "negotiated sale [of Southwest Health] was in place" long before the state court entered judgment against De La Vega and Southwest Health. ECF 175 at 21. They further contend that Plaintiff has presented no evidence that Southwest Health was sold with "actual intent to hinder, delay or defraud" Plaintiff[22] or that De La Vega did not receive a fair price from the sale. *Id.*

---

[22] In their reply brief, Defendants contend that the facts in this case are not indicative of what case law has referred to as "badges of fraud," or factors designed to assist in determining the actual intent of the debtor. ECF 192 at 7 (citing *Ellen Equip. Corp. v. C.V. Consultants & Assocs., Inc.*, 183 P.3d 940, 943 (N.M. Ct. App. 2008)). Among other things, Defendants assert that De La Vega did not retain possession or control of the property transferred [ECF 192 at 7 (citing NMSA § 56-10-18(B)(2))], Southwest Health's proceeds were not concealed [*id.* (citing NMSA § 56-10-18(B)(3))], the use of Southwest Health's proceeds did not involve a transfer of substantially all of a debtor's assets [*id.* (citing NMSA § 56-10-18(B)(5))], and the use of Southwest Health's proceeds did not cause Southwest to become insolvent

As to De La Vega's representation that he "began negotiating for the sale of Southwest Health in 2016," the Court is not convinced that pre-state-court-litigation negotiations to sell Southwest Health—for which De La Vega provides no details and no documentation—foreclose a NMVTA claim against Southwest Health and De La Vega. Given that De La Vega does not describe the extent of the 2016 negotiations or with whom he engaged in them, his vague assertion that negotiations took place two years before the sale fails to demonstrate that Defendants are entitled to summary judgment as a matter of law on Count VI.

As to "actual intent to hinder, delay or defraud," Plaintiff insists that a genuine dispute of material fact exists. ECF 178 at 20. She emphasizes that the undisputed facts demonstrate that De La Vega sold Southwest Health during the underlying state court litigation and then disbursed to MCI and MCI-Mexico, in December 2018, the $1.2 million in proceeds from that sale. *Id.* (citing ECF 171, Ex. 11, at 1 (De La Vega's Response to Interrogatory 20, indicating that "[t]he proceeds of the February 2018 sale were held by . . . De La Vega and the funds were fully disbursed by December 2018 for real estate transactions and liabilities of the real estate companies"). Plaintiff observes that Southwest Health is no longer a going concern, having filed for Chapter 7 Bankruptcy and having reported a mere $400 in assets. *Id.* And she notes that MCI paid for Southwest Health's bankruptcy proceedings. *Id.* In light of the state court case filed in February 2017, the sale of Southwest Health in February 2018, the disbursement of proceeds to MCI and MCI-Mexico in December 2018, and the jury verdict in July 2019, the Court is satisfied that a

[*id.* at 8 (citing NMSA § 56-10-18(B)(9)]. Although the Court does not necessarily share Defendants' view that Plaintiff is without evidence to demonstrate any of these "badges of fraud," it need not address Defendants' arguments in detail because it is otherwise satisfied that Plaintiff has pointed to evidence that creates a genuine dispute of material fact as to "actual intent to hinder, delay, or defraud."

reasonable fact finder could conclude that De La Vega gutted Southwest Health to avoid paying a potential judgment to Plaintiff.[23] Defendants' Motion is denied as to Count IV.

### v. Counts V and VI – Declaratory Judgment and Injunctive Relief Claims

Finally, Defendants contend that summary judgment is warranted in their favor on Counts V and VI, because "New Mexico law does not recognize 'alter ego' as a cause of action." ECF 175 at 5. Defendants argue that, rather than creating a cause of action, the alter ego relationship "allows . . . a court to share liability between parties." *Id*. But Plaintiff characterizes Counts V and VI differently. As she describes them, Count V seeks a declaratory judgment that De La Vega and MCI are alter egos and, likewise, Count VI seeks a declaratory judgment that De La Vega and MCI Mexico are alter egos. ECF 178 at 22. And Plaintiff insists that declaratory relief is a recognized cause of action in New Mexico. *Id*. (citing *Smoot v. Physicians Life Ins. Co*., 87 P.3d 545, 552 (N.M. Ct. App. 2003); *State ex rel. Stratton v. Roswell Indep. Schs*., 806 P.2d 1085, 1096 (N.M. Ct. App. 1991)). In reply, Defendants neither argue nor cite any authority to suggest that New Mexico does not recognize declaratory relief as a cause of action. Indeed, Defendants' reply does not mention Counts V and VI.

As to injunctive relief, Plaintiff clarifies that she "did <u>not</u> plead injunctive relief as a separate count, but rather, as part of the remedies to her other causes of action, such as her cause of action for declaratory relief." ECF 178 at 23 n.125 (citing *Flor v. Bd. of Regents of the Univ. of N.M*., 539 F Supp. 3d 1176, 1202 (D.N.M. 2021) for the proposition that injunctive relief should not be pled as a separate count, but a plaintiff "is not precluded from obtaining injunctive relief as

---

[23] Plaintiff makes an alternative argument that she may also void transfers under the NMVTA in the absence of an "actual intent" showing, and that she has demonstrated a genuine issue of material fact on this claim because (1) she filed her lawsuit in February 2017, a year before the first transfers were made; (2) neither De La Vega nor Southwest Health received "reasonably equivalent value" for the $1.2 million transfer; and (3) given De La Vega sexually harassed Plaintiff, he reasonably should have believed that both Southwest Health and De La Vega would incur debts beyond their ability to pay. ECF 178 at 21–22. Because the Court finds a genuine dispute of material fact regarding intent sufficient to withstand summary judgment, the Court need not reach this alternative argument.

a remedy should [s]he prevail on a claim for which injunctive relief is available."). Because injunctive relief is not presented as a separate cause of action, and because Defendants have not shown that declaratory relief is *not* a cognizable cause of action or that they are otherwise entitled to summary judgment, Defendants' Motion is not well-taken and is denied as to Counts V and VI.

### C.  Plaintiff's Motion for Sanctions

Plaintiff also moves for partial summary judgment as to the second element of her Count I piercing claim against MCI and De La Vega. ECF 171 at 1. In support, she contends that De La Vega has testified falsely and made misrepresentations regarding ownership and transfers of assets that are material to the second element of her piercing claim: improper purpose. *Id*. (citing *Garcia v. Coffman*, 946 P.2d 216, 221 (N.M. Ct. App. 1997)). In the face of De La Vega's representations that his mistakes as to asset ownership and transfers were innocent, Plaintiff insists that "the grand scale of his material misrepresentations demonstrate a conscious effort to hinder Plaintiff's case unfairly and impose unnecessary costs on her." *Id*. She argues that judicial intervention—specifically, granting summary judgment in Plaintiff's favor as to the improper purpose element of her piercing claim—is necessary to address De La Vega's misconduct. *Id*. at 2. Explaining that she seeks summary judgment on this element *as a sanction* for litigation misconduct, Plaintiff observes that courts have "long recognized" the inherent authority to sanction a litigant for his or her false statements or perjury. ECF 171 at 2–3 (citing *Da-Silva v. Smith's Food & Drug Ctrs., Inc.*, No. 2:12-CV-00595-GMN-VCF, 2013 WL 2558302, at *2, 2013 U.S. Dist. Lexis 81217, at *4 (D. Nev. June 8, 2013); *Archibeque v. Atchison, Topeka and Santa Fe Ry. Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995); *United States v. Mandujano*, 425 U.S. 564, 576–57 (1976)). Plaintiff also refers the Court to the rationale articulated by the Honorable Lorenzo F. Garcia in *Rodriguez v. Presbyterian Healthcare Servs.*, No. CIV 11-238 JEC/LFG, 2012 WL 12894833 (D.N.M. Apr. 3,

2012), *proposed findings and recommended disposition adopted,* 2012 WL 12896388 (D.N.M. Aug. 22, 2012), *aff'd,* 515 F. App'x 761 (10th Cir. 2013), a case in which he recommended dismissal with prejudice for discovery abuse:

> [C]ourts are forums in which people may obtain fair resolution of their disputes in accordance with rules intended to preserve that fairness. Courts have the inherent responsibility to protect the integrity of that for[u]m and its processes, and courts should not abrogate that duty to a jury. . . . Litigants who deliberately engage in such egregious conduct as . . . committed here should not be permitted to continue to benefit from the judicial process they have corrupted for personal gain.

*Id.* at *12 (internal citations and quotation marks omitted).

Plaintiff goes on to detail what she describes as De La Vega's false and contradictory testimony and material misrepresentations concerning his personally owned property, ownership interests in MCI, the condition of a piece of property on Isla Holbox, transfers of personally owned real estate to MCI Mexico, disbursements to MCI and MCI Mexico of the proceeds from the sale of Southwest Health, and the ownership of 5717 Green Castle Road, El Paso, Texas. *See* ECF 171 at 3–8.

In response, Defendants argue first that Plaintiff's Motion should be summarily denied for failure to comply with the requirements of Federal Rule of Civil Procedure 56, D.N.M.LR-Civ. 56.1(b), and with "conventions in the practice of law." ECF 177 at 1–2. Specifically, Defendants complain that Plaintiff's Motion contains "no enumerated statement of uncontroverted material facts." *Id.* at 1 (citing D.N.M.LR-Civ. 56.1(b)). According to Defendants, this omission renders them unable to effectively respond to Plaintiff's Motion by citing to genuine issues of fact in the record. *Id.*

Plaintiff counters that her motion "does not involve" Rule 56, as she seeks partial judgment not for lack of genuine issues of material fact but as a sanction for material misrepresentations and

false testimony on issues material to Count I. ECF 180 at 2. Because it is clear from the face of Plaintiff's Motion that she seeks partial summary judgment as a sanction and not under the Rule 56 standard, the Court will not deny her motion on the purely procedural grounds on which Defendants rely.

Defendants devote very little of their joint response brief to the substance of Plaintiff's Motion for Sanctions, but they do make factual allegations that relate to De La Vega's conflicting testimony concerning his ownership of 5717 Green Castle Road. *See, e.g.,* Defs.' AUF ¶ 24, ECF 177 ("The fact that this single El Paso property was titled in the name of Dr. De La Vega individually, as opposed to MCI LLC, was no more than an error in Dr. De La Vega's understanding for this property. Dr. De La Vega did not intend to conceal or omit this one residential property, or misrepresent ownership of this one property to avoid the Judgment against him personally."); Defs.' AUF ¶ 25, ECF 177 ("Although Dr. De La Vega previously testified that the one El Paso property, located at 5717 Green Castle Rd., El Paso, TX, was owned by MCI LLC, this was merely an error given the 25 commercial and residential properties owned by MCI LLC."); Defs.' AUF ¶ 26, ECF 177 ("At no time did Dr. De La Vega intentionally misrepresent the ownership of this single El Paso property at 5717 Green Castle Rd. . . ."). In effect, Defendants suggest that De La Vega's erroneous testimony was an innocent mistake.

In reply, Plaintiff urges the Court to reject Defendants' "feigned innocent mistake theory." ECF 180 at 4. Given that De La Vega is "a licensed physician, perennial litigant, and experienced real estate investor[,]" she posits that his explanation of innocently misremembering the ownership of 5717 Green Castle Road is "untenable" and "does <u>not</u> pass the "smell test." *Id*. (citations omitted).

The Court is disinclined to grant summary judgment on a hotly-disputed element of a hotly-disputed cause of action as a sanction for litigation misconduct. Although the Court acknowledges its duty to protect the integrity of this forum and to ensure that disputes are resolved in accordance with rules intended to persevere fairness, fulfilling that duty looks somewhat different when a case is tried to the bench, rather than to a jury. That is, the Court is confident in its ability to assess credibility in accordance with the rules of evidence and equally confident in counsels' ability to elicit testimony and to present evidence that will allow it to make a fully-informed finding both as to De La Vega's credibility and as to whether Plaintiff has demonstrated that MCI was used for an improper purpose. Indeed, the Court is reluctant to short-circuit a live credibility assessment in favor of making that same credibility assessment based on the parties' written briefs and by reading deposition transcripts. The Court considers it a wiser approach to permit the introduction at trial—for substantive and/or impeachment purposes—of evidence of De La Vega's alleged deceit and deception related *inter alia* to the ownership of various assets, to permit Defendants to contest that evidence, and then to make findings of fact based on that evidence. Plaintiff's Motion for Sanctions is not well-taken and is denied.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Summary Judgment Motion to Pierce Defendant Mesilla Capital Investments, LLC's Veil [ECF 174] and Defendants' Motion for Partial Summary Judgment [ECF 175] are **DENIED** but ruling is **RESERVED** as to the legal issue of whether the New Mexico Supreme Court would adopt as a valid legal theory the outside reverse veil piercing theory on which Plaintiff relies.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment as to the Second Element for Count I, Piercing [ECF 171] is **DENIED**.

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*