**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

ASHLEY IMMING,

Plaintiff,

v. Civ. No. 23-378 GJF/DLM

OSVALDO DE LA VEGA,
MESILLA CAPITAL INVESTMENTS, LLC,
SOUTHWEST HEALTH SERVICES, P.A., and
MESILLA CAPITAL INVESTMENTS
DE MEXICO, S. DE. R.I.,

Defendants.

**ORDER GRANTING IN PART PLAINTIFF'S**
**MOTION FOR ATTORNEYS' FEES AND COSTS**

THIS MATTER is before the Court on Plaintiff's Motion for Attorneys' Fees and Costs (Dkt. No. 262), Defendants' Response thereto (Dkt. No. 266), and the Court's Findings of Fact and Conclusions of Law (Dkt. No. 259) ("FFCL") resulting from the bench trial in this case. As set forth below, the Court will **GRANT IN PART AND DENY IN PART** Plaintiff's Motion by awarding Plaintiff **$312,392.20** in fees and costs.

## I. APPLICABLE LAW

"In a diversity case, the matter of attorney's fees is a substantive legal issue and is therefore controlled by state law." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 461 (10th Cir. 2018) (citation omitted). New Mexico applies the American Rule for attorneys' fees under which, absent some reason to divert from the general rule, "the prevailing party . . . does not receive attorney fees." *Key v. Chrysler Motors Co*., 998 P.2d 575, 581 (N.M. Ct. App. 2000) (quoting *Schroeder v. Mem'l Med. Ctr*., 945 P.2d 449, 451 (1997)). Yet a "trial court can . . . award reasonable fees to the prevailing party if permitted by statute." *Mountain*

*Highlands, LLC v. Hendricks*, No. Civ 08-0239 JB/ACT, 2010 WL 1631856, at *3 (D.N.M. Apr. 2, 2010). For instance, the New Mexico Human Rights Act ("NMHRA") provides that a court may award "reasonable attorney fees" to a party who prevails in an action or proceeding under the Act. *See* N.M.S.A. § 28-1-13(D). In light of the broad remedial purpose of the NMHRA, relevant precedent, and public policy, the Court found and concluded in its FFCL that Plaintiff qualifies as a prevailing party in a proceeding under the NMHRA for which an award of fees is statutorily authorized. *See* Dkt. No. 259 at 57–61. Moreover, given the evidence presented at trial, the Court determined that an award of attorney fees incurred in this collection action—separate and apart from any fees awarded in other jurisdictions for related collection efforts—is warranted. *Id*. at 61.

"[O]ut of fairness to the opposing party, an award of attorneys' fees must be reasonable and necessary to the attorneys' representation of their client in the case." *Mountain Highlands, LLC*, 2010 WL 1631856, at *4. Under New Mexico law, "a court determines the reasonableness of attorney fees by applying the . . . . factors found in Rule [of Professional Conduct] 16-105." *Rivera-Platte v. First Colony Life Ins. Co.*, 173 P.3d 765, 791 (N.M. Ct. App. 2007) (citing *In re N.M. Indirect Purchasers Microsoft Corp. Antitrust Litig.*, 149 P.3d 976 (N.M. Ct. App. 2007)). Those factors include:

> (i) the time and labor required—the novelty and difficulty of the questions involved and skill required; (ii) the fee customarily charged in the locality for similar services; (iii) the amount involved and the results obtained; (iv) the time limitations that the client or the circumstances imposed; and (v) the experience, reputation, and ability of the lawyer or lawyers performing the services.

*Mountain Highlands, LLC*, 2010 WL 1631856, at *4; *see also* N.M. R. Prof'l. Cond. 16-105. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Attorneys' fee determinations lie firmly within the district court's discretion. *Calderon v. Navarette*, 800 P.2d 1058, 1059–60 (N.M. 1990). The Tenth Circuit thus "review[s] the decision to award attorney fees, and the amount awarded, for abuse of discretion," which "has been characterized as an arbitrary, capricious, whimsical, or manifestly unreasonable judgment"—e.g., a judgment that "relies on clearly erroneous factual findings" or is "without any rational evidentiary basis." *Xlear, Inc. v. Focus Nutrition, LLC*, 893 F.3d 1227, 1233 (10th Cir. 2018) (quotations omitted). The discretion afforded the district court does not mean that its consideration of a fee award should result in another major litigation. As the Supreme Court has emphasized:

> [t]he fee applicant . . . must, of course, submit appropriate documentation to meet the burden of establishing entitlement to an award. But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of the district court's superior understanding of the litigation.

*Fox v. Vice*, 563 U.S. 826, 838 (2011) (emphasis added) (internal quotations omitted); *accord Thames v. Evanston Ins. Co.*, 665 F. App'x. 716, 723 (10th Cir. 2016) (unpublished) (observing that "the district court need not identify and justify every hour allowed or disallowed" (quoting *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996))).

Attorneys' fees are generally calculated using the "lodestar method," which "requires a court to multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate for the services of the prevailing party's attorney." *Daniel & Max, LLC v. BAB Holding Co.*, No. 19-173 GJF/GBW, 2019 WL 3936865, at *1 (D.N.M. Aug. 20, 2019). A lodestar calculation is typically used in statutory fee-shifting cases, like the one at hand, because "it provides adequate fees to attorneys who undertake litigation that is socially beneficial." *Id.* In such cases, courts scrutinize fee requests because "statutes were not designed as a form of economic relief to improve

the financial lot of attorneys." *Penn. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

In terms of costs, the presumption is that a court should award the prevailing party costs pursuant to Rule 54 of the Federal Rules of Civil Procedure. *See Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir. 1995). "Only a showing that an award would be inequitable under the circumstances can overcome the presumption in favor of awarding costs to the prevailing party." *West v. N.M. Tax'n & Revenue Dep't*, No. CIV 09-0631 JB/CG, 2011 WL 5223010, at *3 (D.N.M. Sept. 30, 2011) (citing 10 J. Moore & F. Smith, Moore's Federal Practice ¶ 54.101[1][b], at 54–152). As with an award of fees, "the taxing of costs rests in the sound discretion of the trial court." *Gabbo Farms & Orchards v. Pode Chem. Co.*, 81 F.3d 122, 124 (10th Cir.1996) (citation omitted). Despite the "presumption that a prevailing party is entitled to costs, there are circumstances in which it is considered inequitable to award costs to the prevailing party." *Mountain Highlands, LLC*, 2010 WL 1631856, at *4. "For example, '[t]he court may deny an award of costs because the prevailing party was obstructive, acted in bad faith during litigation and incurred unnecessary or unreasonably high costs.'" *Id.*

## II. ANALYSIS

At the Court's direction, Plaintiff's counsel filed a Motion for Attorneys' Fees and Costs to which they appended declarations of counsel, detailed time sheets, and receipts from various costs incurred. *See* Dkt. No. 262. In total, Plaintiff requests an award of $976,302.72 comprised of the following components: $373,524.50 for straight lodestar fees, $31,036.53 for New Mexico Gross Receipts Tax ("NMGRT"), an *additional* $522,934.30 in fees awarded as a "multiplier" or fee enhancement, $43,451.14 for NMGRT on the multiplier, and $5,356.25 in costs. *See* Dkt. No. 262-1 at 7.

Defendants responded in opposition, objecting both to the reasonableness of the quantum of hours requested and to the request for a multiplier. *See* Dkt. No. 266. Although Defendants do not object to specific billing entries submitted in support of Plaintiff's fee request, they highlight motions and theories on which Plaintiff did not ultimately prevail and insist that she should not be awarded fees for work on unsuccessful motions or abandoned claims. *Id*. at 3. Defendants further suggest that the fees Plaintiff requests are not reasonable because there is "clear duplication" of work and "excessive discovery" on "largely uncontroverted" factual issues. *Id*. at 3–4, 6, 15. Finally, Defendants urge the Court to allow fees for only *one attorney*, rather than three, both at trial and throughout the litigation of this case. *Id*. at 7. With respect to costs, Defendants object only to an award of mail and Federal Express expenses. *Id*. at 16.

### A. <u>Plaintiff's Counsel Reasonably Worked 1213.10 Hours</u>

In total, Plaintiff seeks reimbursement for 1,393 hours of attorney and paralegal time for litigating this case through and after trial. Applying the Rule 16-105 factors, the Court concludes that the bulk of hours requested are reasonable under the circumstances.

First, in consideration of the time and labor required to litigate this matter, the Court acknowledges that the case has been heavily litigated for over 30 months, with voluminous discovery and more than twenty court appearances (including many telephonic hearings), resulting in more than 280 entries on the docket. Plaintiff's counsel filed a handful of dispositive motions at the motion to dismiss and summary judgment stages and were well-prepared for the bench trial. By way of example, Plaintiff's counsel developed an effective impeachment strategy, using large binders of indexed materials to confront Defendant De La Vega ("DLV") with prior inconsistent testimony at trial. After trial, counsel prepared closing arguments, 123 pages of proposed findings

and conclusions of law, and a lengthy fee petition. For litigation of this length and scope, attorney time in excess of 1300 hours does not strike the Court as unreasonable or excessive on their face.

Notably, Plaintiff's counsel and their paralegal preemptively eliminated some billing redundancies, writing off more than $18,000 in fees from their billing entries. For example, Mr. Furth wrote off all his time for attending the first day of trial, when Plaintiff was represented by three attorneys. *See* Dkt. No. 262-1 at 23. In addition, Plaintiff minimized fees by permitting the least experienced attorney *with the lowest billing rate*, Paul Hibner, to complete many more litigation and trial tasks than the two more experienced, more expensive attorneys on Plaintiff's team. *Compare* Dkt. No. 262-1 at 2–3 (Ben Furth indicating that he has been practicing for more than 25 years and charges an hourly rate of $295.00/hour) *and* Dkt. No. 262-2 at 1 (Steven Scholl indicating that he has been practicing for more than 35 years and charges an hourly rate of $400/hour), *with* Dkt. No. 262-3 at 1–2 (Paul Hibner indicating that he has been practicing for ten years and charges an hourly rate of $250.00/hour); *see also See MVT Servs., LLC v. Great West Casualty Co*., No. 18-1128 GJF/GBW, 2023 WL 2743531, at *8 (D.N.M. Mar. 31, 2023) (adjusting fees downward on the basis that the plaintiff's attorney work was "top-heavy," as it was performed disproportionately by senior lawyers when it could have been performed by less-senior attorneys).

In terms of novelty and difficulty, neither the remedies sought nor the legal theories advanced in this case were run-of-the mill. Indeed, this case was the Court's first occasion to consider (1) the availability of a standalone cause of action under New Mexico law for piercing the corporate veil and (2) whether the New Mexico Supreme Court would recognize as a viable theory outside reverse corporate veil piercing. The Court entertained multiple rounds of briefing

on these novel legal issues and ultimately reserved ruling on the outside-reverse-corporate-veil-piercing question until after trial.

Despite the novelty of these issues, the Court nevertheless finds that Plaintiff's Motion and some of the many hours devoted to strategizing, analyzing legal issues, and consulting with fellow attorneys overstate the complexity of this case. Given his reputation, experience, and expertise, Mr. Scholl no doubt was a valuable resource to Messrs. Hibner and Furth throughout the course of litigation and at trial. Even so, the Court is confident that, as primary counsel, Messrs. Hibner and Further were themselves capable of researching the unsettled legal issues, effectively litigating the issues that arose, and presenting Plaintiff's case at the two-day, two-witness bench trial. Whether the same was true of the underlying state case or any related judgment enforcement litigation is not a question before the Court. As discussed more fully below, the Court finds that a downward adjustment to the hours allowed is warranted based on the Court's assessment that the case was somewhat over-lawyered given its level of complexity.

With respect to the time limitations that prosecuting this case imposed on Plaintiff's counsel, Mr. Furth testifies that the time devoted to this case precluded his firm from taking other cases and other clients. *See* Dkt. No. 262-1 at 3. The Court's review of the billing records, together with its own experience with this case, squares with the notion that this case precluded Messrs. Furth and Hibner from taking on some other work.

In terms of the amount involved and the results obtained, the Court notes that Plaintiff ultimately prevailed on each of the claims contained in her Second Amended Complaint. *Compare* Dkt. No. 116, *with* Dkt. No. 259. Indeed, Plaintiff's counsel's presentation at trial was a resounding success due in no small part to an effective impeachment strategy under which DLV's testimony was discredited to an extent and at a frequency the Court has never before observed in a civil trial.

The relief Plaintiff sought—and obtained—includes various voided transfers of assets, an order that Mesilla Capital Investments, LLC ("MCI") is jointly and severally liable for her state court judgment in the amount of $867,971.07 with post-judgment interest of 15 percent (currently estimated to be valued at $1,700,000), and a default judgment against Mesilla Capital Investments de Mexico, S. de R.L. ("MCI-MX") for $1,449,392.79, also with interest of 15 percent. *See* Dkt. Nos. 155; 259; 282 at 2. Plaintiff's federal enforcement action did not present the potential for a large monetary upside, like a civil rights case might have, but prevailing on her claims effectively means that Plaintiff has additional avenues for collecting on the judgment entered by the state court in February 2020. Apart from that, Plaintiff's lawsuit also created authority on a legal issue of first impression: whether a claim for outside reverse corporate veil piercing is viable under New Mexico law.

Not surprisingly, Defendants' view of Plaintiff's success in this case is less favorable. As they put it, "Plaintiff actually accomplished little substantively." Dkt. No. 266 at 3. In support, Defendants note that the Court denied four out of six of Plaintiff's motions to compel, her two motions for partial summary judgment, as well as a motion for order to show cause. *Id*. Defendants also urge the Court to make a general reduction of hours to account for Plaintiff's New Mexico Voidable Transfers Act ("NMVTA") claim against MCI, which Plaintiff initially asserted (and on which she conducted extensive discovery) but ultimately abandoned before trial. *Id*. at 4.

As to Defendants' position that the Court should reduce the hours awarded on account of the Court's denial of Plaintiff's motions for partial summary judgment, the Court disagrees. Although the Court ultimately determined that there were fact issues precluding summary judgment in Plaintiff's favor, her presentation of the legal issues in those motions helped framed the Court's analysis of her claims at trial and was helpful in its drafting of the FFCL. And once

again, Plaintiff ultimately prevailed on all claims, including those that were the subject of her motions for partial summary judgment. As such, the Court finds no basis for excising the hours devoted to those filings.

But the Court agrees with Defendants that a reduction of hours is warranted for work performed to compel discovery under Federal Rule of Civil Procedure 37. Significantly, there is a separate procedural mechanism for obtaining a fee award under Rule 37 of which Plaintiff availed herself in this case. *See* Fed. R. Civ. P. 37(a)(5); Dkt. No. 186. Because a fee award is available for *successful* motions to compel, the Court agrees that time entries that reflect time spent briefing and corresponding about motions to compel—a total of 13.3 hours between Messrs. Furth and Hibner—should be excised from the reasonable hours awarded here.

There is also some facial appeal to Defendants' position that Plaintiff should not be compensated for her attorneys' work on her NMVTA claim against MCI, given that they elected not to pursue it. Yet, under the unique circumstances of this case, the Court is satisfied that Plaintiff's counsel had a good faith basis to assert the ultimately-abandoned NMVTA claim against MCI and, further, that DLV's own conduct in concealing assets and hindering Plaintiff's collection efforts also hindered counsel's ability to discern which claims asserted against which Defendants were most suited to the facts. Indeed, it appears that it was only after Plaintiff conducted extensive discovery aimed at determining where, when, and how DLV transferred his assets during and around the time of the state court litigation that Plaintiff's counsel was able to *fully* assess the viability of the various legal theories. Had DLV been more forthcoming about the ownership of his assets and various transfers of such ownership, the fees would have been fewer and the extent of discovery less voluminous. As such, the Court does not consider the abandonment of the NMVTA claim against MCI to justify a reduction in reasonable hours awarded.

As for legal experience and skill, there is little question that Plaintiff's counsel's collective experience, reputations, and abilities support a significant fee award in this case. Indeed, the Court bore witness to their effective brief writing, laborious and detail-oriented discovery efforts, extensive trial preparation, persuasive oral advocacy, and skillful evidence presentation and impeachment techniques at trial. In addition, the Court agrees with Plaintiff that her counsel's representation on a contingency basis further supports the reasonableness of their fee request. After all, Plaintiff's counsel have thus far not been paid for any of their work in the more than thirty months that they have prosecuted this case on her behalf. Moreover, when they agreed to take the case, they faced the very real risk of *never* obtaining payment for their services if their legal theories did not carry the day.

In sum, with the exception of work performed under Rule 37, the applicable factors *generally* support the reasonableness of the hours requested by Plaintiff. Nevertheless, the Court finds some credence in Defendants' criticisms of the quantum of hours sought.

First, the Court finds that Plaintiff seeks fees for some redundant work unnecessarily performed by *four* legal professionals (three attorneys and a paralegal). Although Defendants urge the Court to "allow only the time of one attorney, Mr. Hibner" billed "at the highest hourly rate of all attorneys" (Dkt. No. 266 at 7), the Court instead finds that fairness permits an award of fees for *two attorneys*, but no more. Notably, Mr. Scholl served in a consultant-like role, and much of the work reflected in his detailed billing entries was for tasks related to analyzing, strategizing, and advising or communicating with his co-counsel. *See* Dkt. No. 262-2 at 5–9. While the Court will permit Plaintiff to recover for hours devoted to these strategy sessions and communications in the context of Messrs. Furth and Hibner's billing entries, it finds that *also* permitting Mr. Scholl to recover for these same tasks would be excessive. As a result, the Court will limit Plaintiff to pretrial

attorney fees to those of her two primary attorneys and will disallow fees for work performed by Mr. Scholl during the pretrial stage of the case, which amounts to a reduction of 83.4 hours.

Turning to hours spent attending trial, the Court again agrees with Defendants that charging for three attorneys and one paralegal is excessive. Although having more than one attorney present at trial contributed to an effective cross-examination of DLV, the Court finds that two attorneys' trial attendance hours suffice as reasonable. Given that Plaintiff preemptively wrote off Mr. Furth's time for the first day of trial, the Court will award the hours requested by Messrs. Hibner and Scholl[1] for the first trial day at the rates discussed below. As for the second trial day, the Court finds all of Messrs. Hibner and Furth's requested hours to be reasonable and recoverable.[2] In other words, the Court makes no reduction to the hours requested for any attorney's trial attendance. But as to the hours requested for Ms. Stahl's attendance at trial, the Court finds that charging Defendants for paralegal hours—in addition to the hours incurred by two capable attorneys—is excessive under the circumstances. Accordingly, the Court finds that none of Ms. Stahl's trial attendance hours are reasonable.

Prior to trial, Ms. Stahl devoted more than eight hours to preparing Plaintiff to testify. Given the narrow scope of Plaintiff's expected testimony, if any, and Plaintiff's admission that she lacked any personal knowledge on the relevant issues in the case (*see* Dkt. No. 252 at 19), the Court also finds those hours excessive. Significantly, at the Final Pretrial Conference, Defense counsel indicated that the scope of Plaintiff's testimony would be limited to the timeliness of her claims against MCI and MCI-MX and explained that he expected to elicit testimony only that Plaintiff performed tasks related to MCI during her employment with Southwest Health. Dkt. No.

[1] In addition, the Court finds it appropriate to award Mr. Scholl his travel time to and from Las Cruces to attend the first day of trial.

[2] Mr. Scholl did not attend the second day of trial, and his billing entries reflect as much. *See* Dkt. No. 262-2 at 9.

240 at 4. Had Plaintiff been called to testify, her testimony would have unquestionably been brief and narrow. As a result, the Court will disallow paralegal hours for preparing Plaintiff to testify. To account for Ms. Stahl's essential trial preparation and other litigation tasks, the Court will award 20 hours of paralegal time to Plaintiff, excising the remaining 53 hours of requested time.[3]

On its own review of counsel's billing entries, the Court finds some additional redundancies for which a further reduction of hours is necessary. That is, Mr. Furth includes numerous billing entries for working with Mr. Hibner on trial opening and witness examinations. But Mr. Hibner likewise includes billing entries for working with Mr. Furth on trial opening and examinations. The Court agrees with Defendants' suggestion that they should be on the hook only for the legal mentor's time at the legal mentor's rate, but not for redundant time that reflects training and preparation of a less-senior, less-experienced attorney. To account for these redundancies, the Court reduces Mr. Hibner's time by 30.2 hours.

With respect to the balance of the hours requested, the Court "need not identify and justify every hour allowed or disallowed." *Malloy*, 73 F.3d at 1018. The adjustments identified herein result in 429.30 allowable hours for work performed by Mr. Furth, 747.80 allowable hours for work performed Mr. Hibner, 16 allowable hours for work performed by Mr. Scholl, and 20 allowable hours for work performed by Ms. Stahl. Collectively, these remaining hours constitute an approximately 13-percent reduction in the hours requested by Plaintiff. In light of the Court's findings, its own involvement with and knowledge of the litigation, its review of the record, and Plaintiff's counsel's write-offs, an award of 1,213.10 hours squares with the Court's sense of fairness. Moreover, the Court finds that Plaintiff has "submit[ted] appropriate documentation to

[3] In addition, certain of Ms. Stahl's billing entries appear to relate to work performed on motions to compel, including on the motion to compel for which Plaintiff already sought and received fees from this Court pursuant to Rule 37. *See* Dkt. No. 252-1 at 62. Those hours have been excised by the Court.

meet the burden of establishing entitlement to an award" for these remaining hours. *See Fox*, 563 U.S. at 838. Plaintiff provided, and the Court has reviewed, Mr. Furth's five-page declaration and 18 pages of billing entries, Mr. Hibner's two-page declaration and 31 pages of billing entries, Mr. Scholl's four-page declaration and five pages of billing entries, and Ms. Stahl's 11 pages of billing entries. *See* Dkt. Nos. 262-1, 262-2, 262-3. The Court is satisfied that Plaintiff met her burden to demonstrate the reasonableness of approximately 87 percent of the requested hours (*i.e.*, 1213.10 hours). To be sure, it has taken Plaintiff over two and a half years of hard-fought, diligent effort in this forum alone (not to mention the effort she devoted to other cases in other forums) to obtain a judgment collectable against the corporate entities in which DLV now holds essentially all of his wealth. This undertaking, particularly in the face of DLV's attempts to hinder Plaintiff's collection efforts, has quite reasonably taken Plaintiff's counsel more than twelve hundred billable hours.

**C. <u>Reasonable Hourly Rates</u>**

To determine a reasonable rate for the legal professionals seeking fees, the Court must consider the "prevailing market rate in the relevant community." *Malloy*, 73 F.3d at 1018. For her part, Plaintiff is charged with providing evidence of the prevailing market rate for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community. *Id*. (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1255–56 (10th Cir. 1998)). In addition to considering evidence of prevailing market rates, the Court may "use other relevant factors, including its own knowledge, to establish the rate." *Lippoldt v. Cole*, 468 F.3d 1204, 1225 (quotation omitted).

Here, Plaintiff's primary counsel, Messrs. Furth and Hibner, seek reimbursement at hourly rates of $295 and $250, respectively. Mr. Furth has been a civil litigator for more than twenty-five years, whereas Mr. Hibner has been practicing for almost ten. Dkt. No. 262-1 at 2. Plaintiff notes

that two months ago the United States Bankruptcy Court for the District of New Mexico approved as reasonable the same hourly rates that Messrs. Furth and Hibner request here. *See* Dkt. Nos. 262-1 at 2; 262-11 at 3. In addition, Plaintiff submits the Declaration of Annie Mason, who opines that the requested hourly rates are reasonable and, in fact, "low under the circumstances." Dkt. No. 262-8. Notably, during Plaintiff's underlying sexual harassment case, which was now more than five years ago, the Third Judicial District Court of New Mexico approved lower rates than those requested here: $275 per hour for Mr. Furth and $180 per hour for Mr. Hibner. *See Imming v. De La Vega, et al.*, No. D-307-CV-2017-00389 (Feb. 6, 2020).

Mr. Scholl's current hourly rate of $400.00 is by far the highest of the attorneys on Plaintiff's side, but he also has the most experience, having been a civil litigator for more than three decades and with a resume that boasts extensive trial and teaching experience. *See* Dkt. No. 262-2 at 1–4. Testifying that he has charged an hourly rate of $400 since early 2022, Mr. Scholl acknowledges that more than five years ago, he was awarded only $350 per hour in the underlying sexual harassment litigation. *See Imming*, No. D-307-CV-2017-00389 (Feb. 6, 2020).

For their part, Defendants do not contest the hourly rates sought by Plaintiff's counsel, other than to observe that they are "at the highest market rates." Dkt. No. 266 at 7. Instead, Defendants "rely on the Court's experience and discretion with hourly rates claimed and awarded in other courts and proceedings." *Id*.

Drawing on that experience, the Court finds hourly rates of $295 for Mr. Furth and $200 for Mr. Hibner to be within the bounds of reasonable rates in this locality. *See MVT Servs., LLC*, 2023 WL 2743531, at *9 (finding an hourly rate of $325 to be "decidedly on the higher side of the prevailing market rate in [the southern New Mexico] locality"); *cf. Escano v. Innovative Fin. Partners, LLC*, No. 23-277 MLG/GJF, 2024 WL 243558, at *17 (D.N.M. Jan. 23, 2024)

(recommending that the hourly rates at an Albuquerque firm be set at $325 for partners, $225 for associates, and $125 for paralegals). Although Mr. Scholl is unquestionably among the most experienced and effective civil litigators in New Mexico, his hourly rate of $400 gives the Court pause because it significantly exceeds the fee customarily charged in southern New Mexico for similar legal services. *See MVT Servs., LLC*, 2023 WL 2743531, at *9 (citation omitted). In the Court's view, the litigation of this case did not require special skills or expertise that could only be found in attorneys outside of New Mexico, and relatedly, Plaintiff has not established that the services Mr. Scholl performed could not have been competently performed by her two capable Las Cruces attorneys. Accordingly, the Court finds that an hourly rate of $325 constitutes a reasonable rate in this community for attorneys of skill, experience, and reputation similar to those of Mr. Scholl.

Applying the lodestar method, by which the reasonably hourly rate for services by each prevailing attorney is multiplied by the number of hours reasonably expended by that attorney, the Court arrives at a straight lodestar amount of **$307,723.00**, consisting of:

(1) $126,643.50 for Mr. Furth ($295 x 429.30 hours)

(2) $149,560.00 for Mr. Hibner ($200 x 747.80 hours)

(3) $5,200 for Mr. Scholl ($325 x 16 hours)

(4) $2,500 for Ms. Stahl ($125 x 20 hours)

(5) $23,819.50 for NMGRT ($283,903.50 x 8.390%)

**D. <u>Request for Multiplier</u>**

Plaintiff emphasizes that "[a]n award based on a lodestar may be increased by a multiplier if the lower court finds that a greater fee is more reasonable after the court considers the risk factor and the results obtained." Dkt. No. 262 at 19 (quoting *Atherton v. Gopin*, 272 P.3d 700, 702 (N.M.

Ct. App. 2012)). In support, she suggests that "[t]he risk in this case could not be higher, and the results could not be better." *Id*. at 20. In Plaintiff's view, the straight lodestar amount does not adequately take account of "the risk of nonpayment, the exceptional result, and deferral of payment." *Id*. at 24. But to the contrary, the Court considered each of these factors in determining that the straight lodestar amount provides adequate fees to the attorneys who undertook Plaintiff's representation in this enforcement action. *See*, *supra*, p. 10 (noting that Plaintiff's counsel represented her on a contingency basis, have not yet been paid for any of their work, and faced the very real risk of *never* obtaining payment for their legal services when they agreed to take the case). Moreover, the present case is distinguishable from the cases on which Plaintiff principally relies, most notably because it is not a class action, for which multipliers are more commonly applied. *See* Dkt. No. 262 at 24–25 (citing *Microsoft Corp. Antitrust Litig.*, 149 P.3d at 1004 (affirming multiplier of three in class action case); *Puma v. Wal-Mart Stores East, LP*, 523 P.3d 589, 606 (N.M. Ct. App. 2023) (affirming the trial court's 1.5 multiplier in class action case)).

Bearing in mind that fee-shifting statutes were not designed "to improve the financial lot of attorneys," *Penn*, 478 U.S. at 565, the Court declines to award a multiplier to the fee award here. Under the circumstances of this case, the Court is satisfied that the lodestar amount, even as reduced herein, constitutes sufficient and reasonable fees for litigating this federal enforcement action without any need to enhance those fees through application of a multiplier.

Accordingly, insofar as Plaintiff's Motions seeks an award of fees, it is granted in part and denied in part, and the Court's forthcoming Final Judgment will award Plaintiff $**307,723.00** in reasonable fees incurred in this litigation.

**E. <u>Plaintiff's Reasonable and Necessary Costs</u>**

In addition to fees, Plaintiff seeks reimbursement for costs in the amount of $ 5,356.25 pursuant to Federal Rule of Civil Procedure 54(d)(1) and the New Mexico Human Rights Act. *See* Dkt. No. 262 at 27. Defendants oppose only Plaintiff's request for reimbursement of mail and Federal Express expenses and otherwise concede that an award of costs is appropriate. *See* Dkt. No. 266 at 16.

Indeed, Rule 54(d)(1) is quite clear: "Unless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs . . . *should be allowed* to the prevailing party." Fed. R. Civ. P. 54(d)(1) (emphasis added). Although "the burden is on the prevailing plaintiff[] to establish the amount of compensable costs and expenses to which [she is] entitled[,]" *Mares v. Credit Bureau of Raton*, 801 F. 2d 1197, 1208 (10th Cir. 1986) (citations omitted), the district court "must provide a valid reason for not awarding costs to a prevailing party." *Utah Animal Rights Coal. v. Salt Lake Cnty.*, 566 F.3d 1236, 1245 (10th Cir. 2009).

Taxable costs under Rule 54(d) are limited to:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920 (2008); *Stender v. Archstone-Smith Operating Tr.*, 958 F.3d 938, 941 (10th Cir. 2020) (explaining that "the Supreme Court has construed Rule 54(d) to be limited by § 1920"); *see also* D.N.M.LR-Civ. 54.2 (providing that taxable costs include the cost of reasonably necessary depositions and transcripts; lay witness costs; interpreter and translator fees; copies requested by

the Court or admitted into evidence; and maps, charts, models, photographs, summaries, computations, and statistical summaries admitted into evidence).

Of the costs for which Plaintiff seeks reimbursement, the Court finds the following taxable to Defendants: the filing fee ($402.00), service of the complaints ($214.68),[4] hearing/trial transcripts and audio recording fees ($1,145.67), document fees from financial institutions ($230.05), witness fees ($165.00), service of trial subpoenas ($162.09), and deposition transcript fees ($2,349.71). In contrast, costs that Plaintiff incurred for certified copies of the FFCL, recording fees, and Federal Express expenses are *not* taxable to Defendants because neither the applicable statutes nor the Local Rule specifically contemplate awarding such expenses to the prevailing party, and Plaintiff has provided no other justification for imposing them on Defendants. *See* 28 U.S.C. § 1920; N.M.S.A. § 28-1-13(D); D.N.M.LR-Civ. 54.2. Insofar as Plaintiff seeks an award of costs, her Motion is granted in part and denied in part, and the Final Judgment will award Plaintiff taxable costs in the total amount of **$4,669.20**.

## III. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Attorney's Fees and Costs (Dkt. No. 262) is **GRANTED IN PART AND DENIED IN PART** in that the Court's Final Judgment will award fees and costs in the total amount of **<u>$312,392.20</u>** as follows:

- $283,903.50 in fees
- $23,819.50 in NMGRT for fees, and
- $4,669.20 in recoverable costs.

[4] Private process server fees are generally taxable up to the amount that would have been incurred had the U.S. Marshals Service effected service. *See Carleton v. Wal-Mart Stores, Inc.*, No. Civ 99-965 MV/DJS, 2001 WL 37125271, at *3 (D.N.M. Feb. 6, 2001). Because the Marshals Service charges $65 per hour for each item served, *see* 28 C.F.R. § 0.774(a)(3), the outer limit for serving two complaints on three defendants is $390.00. Thus, the Court considers the full $214.68 in service fees requested to be taxable to Defendants.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Attorney's Fees and Costs is otherwise **DENIED**.

**SO ORDERED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
***Presiding by Consent***